DA 08-0468

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 153

IN THE MATTER OF:

C.M.C., C.C., and C.J.,

      Youths in Need of Care

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin,
Cause Nos. DN 07-17B; DN 07-18B and DN 07-19B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Kelli S. Sather,
Assistant Appellate Defender, Helena, Montana
(Attorney for Appellant and mother, S.P.)

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Mark W. Mattioli
Assistant Attorney General, Helena, Montana

            Marty Lambert, Gallatin County Attorney; Deborah Pratt, Deputy County
Attorney, Bozeman, Montana

Submitted on Briefs:  March 4, 2009

Decided:  May 5, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      This is an appeal by S.P. (the mother) from the August 19, 2008 order of the District Court of the Eighteenth Judicial District, Gallatin County, the Hon. Mike Salvagni, terminating her parental rights to her minor children C.M.C., C.C., and C.J.  We affirm.

¶2      The mother presents issues for review that we restate as follows:

¶3      Issue One:  Whether the District Court erred in concluding that the State met the statutory criteria for terminating the mother's parental rights.

¶4      Issue Two:  Whether the mother was denied effective assistance of counsel.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5      The mother's children are C.M.C., a boy born in 2003; C.C., a girl born in 2004 with cerebral palsy; and C.J., a boy born in 2006.  In March, 2007, the Department of Health and Human Services (DPHHS) petitioned the District Court to authorize emergency protective services and temporary legal custody of the children.  The mother had left the children with her parents, saying that she was homeless and could not safely care for them.  She asked that they be placed in the care of the State.  The mother's parents have had physical custody of two of the children and the other has been in foster care throughout most of the time since then.  In April, 2007, the mother stipulated that the District Court could adjudicate the children to be "youths in need of care" under Montana law.  After a May, 2007, dispositional hearing, the District Court granted temporary legal custody of the children to DPHHS for six months, and ordered the mother to complete a structured treatment plan.  In October, 2007

the State petitioned for a six month extension of temporary legal custody to allow the mother more time to work on the treatment plan, and she agreed.

¶6 On April 29, 2008 the State petitioned to terminate the parental rights of the mother based upon the contention that she had failed to comply with the treatment plan. The District Court held an evidentiary hearing on the petition on August 5 and 6, 2008, at which the mother testified. The mother was represented by counsel throughout these various proceedings. The District Court issued its Findings of Fact, Conclusions of Law and Order on August 19, 2008, terminating the mother's parental rights.

¶7 The District Court's findings of fact were comprehensive and detailed. They described the evidence regarding the mother's inconsistent and half-hearted efforts and her substantive failure to comply with the major requirements of the treatment plan. At the same time, the children had thrived in their alternative placements following the award of temporary legal custody.

¶8 The treatment plan required the mother to complete a chemical dependency evaluation and to comply with any recommendations that resulted. The mother completed that evaluation with Karen Furu, whose report identified concerns that included the mother's involvement in abusive relationships with men including the fathers of her children, her use of alcohol and drugs starting at age 16, and the fact that C.C. is a special needs child. The evaluation showed that the mother was in denial about substance abuse and her relationships with men, and had a high probability of having a substance dependency disorder. The mother tested positive for alcohol residue. Furu recommended that the mother abstain from alcohol and drugs; that she complete a psychological examination; that she participate in

3

family and relationship counseling and in drug and alcohol counseling; and that she participate in individual counseling with a mental health professional and with a licensed addiction counselor. The mother did not follow through with all of the recommendations. She began individual counseling with Sally Hand several months later but made no appointments for months after that.

¶9     The mother underwent a psychological evaluation in August, 2007, with Dr. Ned Tranel. His report concluded that the mother has a narcissistic personality disorder, a naïve and detached approach to parenting responsibilities, a tendency to become involved with dysfunctional men, and a strong possibility of substance abuse. Tranel determined that the mother's relationships with dysfunctional men were self destructive and sabotaged her relationships with her children. At the same time, he found that she exaggerates the true facts by insisting that everything is fine.

¶10     The evidence clearly illustrated how the mother's relationships with men given to physical and verbal abuse and substance use jeopardized the safety of her children. The mother had an ongoing relationship with one man whose own children were taken from him based upon his neglect and substance abuse. She maintained that relationship until six weeks before the termination hearing. She had a relationship with C.J.'s father, which ended only after he pointed a gun at a babysitter and the three children in a dispute over a car.

¶11     Tranel recommended that the mother complete parenting classes, vocational assistance, individual counseling, participation in a self-help group to deal with her personality disorder and that she participate in a 12-step type program to deal with the effects of drugs in her life. The mother completed only the parenting class and some counseling.

4

¶12　The mother did not maintain consistent employment or utilization of public assistance, and did not seek vocational training, as required by the plan. She did not participate in any self-help groups. She failed to maintain contact with her social worker Carol Julien, and failed to maintain a permanent residence or to provide notice of her address so that her living conditions could be assessed. She failed to have the men she lived with provide information for background checks as required by the plan. Julien testified that the mother was not able to meet the needs of the children and had not changed. Julien's opinion was that the children needed to "get on with their lives" with a permanent home.

¶13　Marilyn Riley was a counselor for the children C.M.C. and C.C. She reported that they suffered severe anxiety from trauma while with the mother and that they continued to suffer from post-traumatic stress disorder. C.M.C. reported that one of the mother's men had hit him, and that he had seen the mother and boyfriend fighting. Riley found that at age 4 C.M.C. was acting as a caretaker for his younger sister who has cerebral palsy. Riley found that both children had responded remarkably well to living with the mother's parents in an atmosphere of predictability, love and protection that should be continued.

¶14　George Marleau is the mother's step-father and had cared for C.C. and C.M.C. for almost a year, along with the maternal grandmother. He testified to the chaotic conditions with the mother and children when they periodically lived with the parents. He observed that she gave the children little structure and consistency as to things like daily schedules, meals and bed times. He observed that she took the children with her when she went out at night and would live with the parents for days and then disappear for days. He testified that after the children were left in his custody the mother would sometimes call on the phone, loud and

5

drunk, wanting to talk to the children. He testified that when the children first arrived at their house they were unruly but that they now have manners and are healthy. He believed that it was in the best interests of the children to stay in stable foster placement and to be adopted.

¶15 The mother's brother Joshua testified about the year he was in Montana between deployments with the Marine Corps. He lived with the parents while they had custody of the children. He worked at the Hub Bar and testified that he saw his sister there two or three times a month and that he saw her drinking. He also saw her "out" on the town during times she said she was working.

¶16 Kira Poulson was the guardian ad litem for the children. She expressed concern about the mother's lack of commitment and her failure to take all necessary steps to have the children returned to her. She recommended that the mother's parental rights be terminated.

¶17 The District Court concluded that the mother had failed to complete her treatment plan after having a year to do so, and that the plan had not been successful. She had not maintained steady employment or place of residence. She did not refrain from alcohol or bars. She did not get the individual counseling that had been indicated by Tranel and Furu. Judge Salvagni found that the mother's explanation for discontinuing individual counseling was not credible and was not successful because she chose to continue living with the man whose own children were removed from him. Accordingly, he ordered termination of her parental rights and this appeal followed.

## STANDARD OF REVIEW

6

¶18 A court may order the termination of parental rights upon a finding supported by clear and convincing evidence that the child is a youth in need of care. Section 41-3-609(1), MCA. The court must find that the parent's conduct is unlikely to change in a reasonable time, considering a list of factors the primary one of which is the "physical, mental, and emotional conditions and needs of the child." Section 41-3-609(3), MCA; *In the Matter of C.J.K.*, 2005 MT 67, ¶ 14, 326 Mont. 289, 109 P.3d 232.

¶19 This Court reviews a district court's order on termination of parental rights for an abuse of discretion. *In the Matter of J.V.*, 2003 MT 68, ¶ 7, 314 Mont. 487, 67 P.3d 242. A court acts arbitrarily when it acts without employment of conscientious judgment or in excess of the bounds of reason resulting in substantial injustice. *Matter of C.J.K.*, ¶ 13. Findings of fact are reviewed under the clearly erroneous standard, and conclusions of law are reviewed to determine whether they are correct. *Matter of C.J.K.*, ¶ 13.

¶20 This Court exercises plenary review of whether a parent was denied effective assistance of counsel in termination proceedings. *In the Matter of A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, 87 P.3d 408.

**DISCUSSION**

¶21 *Whether the District Court erred in concluding that the State met the statutory criteria for terminating the mother's parental rights*.

¶22 The mother contends that the State failed to present clear and convincing evidence that the statutory criteria for termination of parental rights were met, and that the District Court failed to make adequate findings.

7

¶23 A natural parent's right to the care and custody of his or her child is a fundamental liberty interest which must be protected by fundamentally fair proceedings. *Matter of A.S.*, ¶ 12. The court may terminate the parent-child legal relationship upon clear and convincing evidence that:

> (f) the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Section 41-3-609(1)(f), MCA. Clear and convincing evidence is

> simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*In the Matter of E.K.*, 2001 MT 279, ¶ 32, 307 Mont. 328, 37 P.3d 690. The district court must give "primary consideration to the physical, mental and emotional conditions and needs of the child." Section 41-3-609(3), MCA. The child's health and safety are of paramount concern. Section 41-3-101(4), MCA. The best interests of the child and the need for permanent placement in a loving and stable home take priority over parental rights. *In the Matter of A.T.,* 2006 MT 35, ¶ 20, 331 Mont. 155, 130 P.3d 1249.

¶24 The children here were adjudicated to be youths in need of care, and the mother stipulated to that determination. There is sufficient clear and convincing evidence that the mother did not complete the treatment plan, and that it was not successful. The State's

8

witnesses who had worked directly with the mother testified that while she completed some of the required steps of the treatment plan, she never followed through with most of them. The testimony showed that the mother's compliance with the plan was tardy, half-hearted and sporadic. She did not comply with some of the most crucial steps of the plan such as individual counseling, steady employment, a permanent residence, and disclosure of her male companions. She continued to use alcohol and to go to bars.

¶25 The District Court's conclusion that the mother's conduct was not likely to change was likewise demonstrated by clear and convincing evidence. That determination requires a predictive assessment based upon past and present conduct of the parent. *In the Matter of M.T.*, 2002 MT 174, ¶ 34, 310 Mont. 506, 51 P.3d 1141. In the present case the District Court had conducted several proceedings involving the mother in the year prior to the August, 2008 hearing on termination of parental rights. For example, at the May 3, 2007 dispositional hearing the mother agreed to the treatment plan and it was then adopted by the court. Judge Salvagni emphasized to the mother the need for her to follow every requirement of the plan and especially to maintain required contact with her social worker. He explained that termination of her parental rights could occur unless she followed the plan and all its requirements. He told her that she would have to be able to show that she was "changing the way that you've been handling things so that these children are kept safe and kept healthy." He cautioned her "to put your children at the top of your priority list."

¶26 Several months later, on August 3, 2007, the mother was again before the court about the treatment plan. The State reported that she had made only "minimal progress" and had not been truthful about her employment status. The court emphasized to the mother again

9

the importance of compliance and the dire consequences that could follow if she failed to do so. Another hearing occurred on November 2, 2007, on the State's application to extend temporary legal custody of the children and to extend the mother's time for compliance with the treatment plan for another six months. The mother appeared and agreed that she needed more time to work on the requirements of the plan. At the next hearing on February 22, 2008, the mother still had questions about what she was required to do under the plan, and the court answered them. She had not done anything with regard to counseling or self-help group participation to address the critical issues of co-dependency and her practice of selecting dysfunctional partners. Judge Salvagni warned her that "you don't have very much time left."

¶27 Despite these repeated warnings in open court and repeated attempts by her social worker and other professionals who tried to work with her, the mother had still not completed the requirements of the treatment plan after passage of a year. More fundamentally, she had not changed her destructive—as to the children—habits of living with violent, substance-abusing men, failing to maintain employment, and failing to take personal responsibility for the serious situation that she was in regarding her children. The long-standing efforts by the District Court and others to get the mother to put the "children at the top of [her] priority list" had not been successful. She never demonstrated that she was committed to making reunion with her children the most important goal of her life, and this was evident in her lack of compliance with the plan.

¶28 The likelihood that she was not going to change in a reasonable time was also demonstrated by her testimony at the termination hearing. She continued to blame others,

10

such as her parents, for her problems. She testified that her own brother was lying when he testified that he had seen her out in a bar on a number of occasions. She attempted to minimize the testimony of her social worker and others about her lack of serious progress with the treatment plan. She gave the same type of excuses for non-compliance that she had given for the prior year.

¶29 The District Court's thorough Findings of Fact and Conclusions of Law in this matter demonstrate, contrary to the mother's contention on appeal, that Judge Salvagni was fully cognizant of the detailed requirements of Montana law that applied to the many proceedings he conducted concerning these children and their mother. There is no substantial showing that he misapprehended his role or the requirements of the law at any point. We find no error.

¶30 *Whether the mother was denied effective assistance of counsel.* Montana law, recognizing the important and fundamental interests involved, provides that a parent in a termination of rights proceeding is entitled to the effective assistance of counsel. *Matter of A.S.*, ¶¶ 12, 20. This Court has adopted "benchmark, although nonexclusive, criteria" for evaluating effectiveness of counsel in termination proceedings. The first factor requires consideration of counsel's experience and training representing parents in termination proceedings, and the second is the quality of advocacy demonstrated at the hearing. *Matter of A.S.*, ¶ 26. Even if counsel's performance is found to be ineffective under these criteria, the parent must have suffered prejudice as a result. *Matter of A.S.*, ¶ 31.

¶31 The mother contends that her first attorney, who represented her in proceedings prior to the termination hearing, and her second attorney who represented her at the termination

11

hearing, both provided her with ineffective assistance. The mother has provided no argument of any kind as to the attorneys' experience and training. We cannot evaluate this factor without even an argument as to how it may apply in the case, and decline to speculate.

¶32 We will nonetheless address those arguments that the mother has made. She contends that her first attorney was ineffective for failing to object to the District Court's application of the wrong evidentiary standard in finding that the children were abused and neglected. The District Court stated, in a hearing, that there was "probable cause" that the children were abused and neglected, not that they were shown to be abused and neglected by a preponderance of the evidence. There was no evidentiary hearing on whether the children were abused and neglected because the mother stipulated that they were abused and neglected. Therefore, even assuming that counsel should have objected to the District Court's reference to an improper standard, there is no showing that the mother was prejudiced or that she would have changed her stipulation if the District Court had cited a different standard. We do not find that this event demonstrates any material prejudice to the mother and does not demonstrate ineffective assistance of counsel.

¶33 The mother next contends that her attorney did not object to the "appropriateness of the treatment plan." The argument is that there were no statements in the treatment plan explaining why the State "believed" that various parts of the plan were applicable to her and that those statements were required by § 41-3-443, MCA. The mother specifically agreed to the treatment plan. She and her attorney attended the hearing held to consider adoption of the plan and heard explanations and warnings from the District Court about its provisions and requirements. The mother asked questions about specific provisions of the plan and the

12

District Court answered her questions. There is no requirement in § 41-3-443, MCA, that the State explain on the face of the treatment plan why it "believes" that each portion of the plan applies and should be implemented. Section 41-3-443(2)(a), MCA, requires a treatment plan to identify the "problems or conditions that resulted in the abuse or neglect." The plan here plainly did so, setting out the mother's problem areas and what she had to do to address them. The mother made no claim below that she did not understand the plan or what it required of her. When she had questions about the plan, she asked those questions at the several hearings that were conducted over the year prior to the termination hearing. There is no showing that any failure to explain the State's beliefs in the treatment plan impaired in any substantial way the mother's lack of compliance and lack of success. It was her failure to comply that led to termination. We find that this event does not demonstrate any material prejudice to the mother and does not demonstrate ineffective assistance of counsel.

¶34   The mother contends that her attorney in the termination hearing was ineffective for failing to recognize that the District Court had the authority to deny the State's termination petition and to continue the temporary legal custody situation of the children. The transcript of the two-day termination hearing shows that the mother's attorney actively pursued her interests, making appropriate objections, vigorously cross-examining witnesses, and making extended closing argument.

¶35   Even if we assume that counsel should have clarified the District Court's authority on the record, the transcripts of the several hearings in the year prior to the termination hearing, the termination hearing itself, and the written decision more than adequately demonstrate that Judge Salvagni was well aware of the factual and legal situation. He clearly appreciated,

13

because he remarked on it a number of times, that if the State petitioned for termination of parental rights, he had to make a decision to grant or to deny that petition. If he denied the petition, then he would have had to decide what to do next, keeping in mind the paramount factor of the best interests of the children. The mother has not made any showing that this event materially prejudiced her and it does not demonstrate ineffective assistance of counsel.

¶36 Last, the mother argues that her attorney at the termination hearing was ineffective for failing to call the mother's counselor, Sally Hand, as a witness. Hand was initially listed as a witness for the mother but was not called by either side at the termination hearing. Hand saw the mother for individual counseling for several sessions in the year prior to the termination hearing. The mother discontinued her visits to Hand for reasons the District Court found to be not credible, and then scheduled a last-minute session just prior to the termination hearing. The mother contends that Hand could have countered the testimony of the State's witnesses. Hand's testimony as shown in the affidavit appended to the mother's brief, at most would have provided only limited assistance to the District Court in making the decision.

¶37 Hand's affidavit, attached to the mother's brief on appeal, is an out-of-record document essentially stating Hand's disagreement with the District Court's decision to terminate parental rights. The averments and opinions in the affidavit are not part of the District Court record. They have not been subject to cross-examination or to evidentiary objections. Moreover, the Hand affidavit does not address the issues of counsel's training and experience or the quality of advocacy as required by *Matter of A.S.*, nor does it demonstrate that the mother incurred prejudice because Hand did not testify. Parties on

14

appeal are bound by the record and may not present additional matters in briefs or appendices. *State v. MacKinnon*, 1998 MT 78, ¶ 15, 288 Mont. 329, 957 P.2d 23.

¶38    The face of the hearing record demonstrates that the mother's trial attorney provided her with vigorous and competent representation. Here there is no showing or argument concerning trial counsel's training and experience, and there was facially competent representation appearing on the trial record. There has therefore been no threshold showing that the mother was denied effective assistance of counsel.

¶39    For the reasons stated above, we affirm the District Court.


/S/ MIKE McGRATH


We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS



Justice Jim Rice, concurring.

¶40    I concur with the results reached by the Court, but offer some additional thoughts regarding Issue 2, the ineffective assistance of counsel claim. I believe appellate counsel has offered one of the more skillful IAC arguments we have seen in a parental rights case since this Court held that parents were entitled to make such claims in *In the Matter of A.S.* Appellate counsel has closely reviewed the performance of trial counsel and identified

15

several potential errors. The Court concludes that no prejudice could have arisen from counsel's action, essentially deciding the case under the "second prong" of the IAC standard, *In the Matter of A.S.*, ¶ 21. This is an appropriate disposition. However, the Appellant makes points about her trial counsel's performance and the proper remedy which I find to be noteworthy.

¶41 Appellant explains that her trial counsel filed a "Notice of Expert Witness" indicating that Appellant's former counselor, Sally Jo Hand (Hand), would be called to testify, but then failed to call her as a witness. To illustrate the potential impact of trial counsel's alleged error in failing to call Hand, Appellant has submitted with her appellate briefing an affidavit from Hand which she describes as an "offer of proof" about Hand's testimony. Based on Hand's affidavit, Appellant argues that Hand would have testified that Appellant was diligently working on and making significant progress in her personal development, parenting skills and relationships, that Appellant was consistent in keeping her appointments, that she was highly engaged, accepting recommendations and implementing them, and that in breaking off her relationship with her boyfriend, she had shown progress in her decision making. Hand would have further testified that termination of Appellant's parental rights was likely to detrimentally affect the children.

¶42 The State criticizes Appellant's submission of the affidavit and offer of proof, arguing that it should not be "a means by which appellate counsel can interject extra-record evidence on appeal, including, as here, hearsay. An appeal is necessarily confined to the record below." (Citation omitted.) This underscores a practical dilemma faced by an appellant's

counsel: How can trial counsel's failure to introduce evidence supportive of the client's position be demonstrated on appeal?

¶43 As Appellant explains in her reply brief, she is not, as the State contends, attempting to add additional evidence to the record. Rather, she has made the "offer of proof" to establish a basis for the remedy she seeks here: a remand for a limited evidentiary hearing regarding her counsel's performance. As authority, she has cited both our holding in *In re K.G.F.*, 2001 MT 140, ¶ 93, 306 Mont. 1, 29 P.3d 485 ("[T]he record before this Court, particularly any evidence of the critical pre-hearing investigation, is insufficient. Accordingly, this matter is reversed and remanded for a fact finding hearing . . . ."), and *People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007), which concluded that the mother's appellate offer of proof had made a prima facie showing of ineffective assistance of counsel and remanded the case for an evidentiary hearing. The Colorado Court noted the problem we face here, that "[t]he chief problem is that the record may not contain sufficient information to enable the appellate court to resolve the parent's contentions." *People in Interest of C.H.*, 166 P.3d at 291.

¶44 I believe Appellant has made a viable "first prong" claim and offered a viable remedy, a remand for a limited evidentiary hearing. However, given my agreement with the Court's conclusion that the lack of prejudice in this case cannot be overcome by additional analysis of trial counsel's performance, I concur in affirming the District Court.

/S/ JIM RICE

17

Justice James C. Nelson joining in the concurring Opinion of Justice Jim Rice.


/S/ JAMES C. NELSON