DA 09-0370

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 4

IN THE MATTER OF:

J.J.L., D.J.L., and R.D.L.L.,

       Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District, In and For the County of Cascade, Cause No. DDJ 08-085-Y Honorable Dirk M. Sandefur, Presiding Judge |

COUNSEL OF RECORD:

       For Appellant:

              Joslyn Hunt, Chief Appellate Defender; Tammy A. Hinderman, Assistant Appellate Defender; Helena, Montana

       For Appellee:

              Hon. Steve Bullock, Montana Attorney General; Jonathan M. Krauss, Assistant Attorney General; Helena, Montana

              John Parker, Cascade County Attorney; Theresa L. Diekhans, Deputy County Attorney; Great Falls, Montana

                     Submitted on Briefs: November 12, 2009

                              Decided: January 12, 2010

Filed:

                      _____

                                 Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Appellant D.L. appeals from the Order entered by the Eighth Judicial District Court terminating his parental rights.

¶2     This Court rephrases the following issues on appeal:

¶3     I.     Whether D.L. was denied effective assistance of counsel during the adjudication hearing.

¶4     II. Whether the District Court properly determined that the Indian Child Welfare Act (ICWA) did not apply to this case.

## BACKGROUND

¶5     The Appellant father, D.L., appeals from the District Court Order and Judgment terminating D.L.'s parental rights to his three children:  J.J.L. (5-year-old daughter), R.D.L.L. (3-year-old son), and D.J.L. (1-year-old daughter) (collectively, the Children). The Children's mother, A.P., has three older children:  a teenaged son, J.M., R.P. (13-year-old daughter), and J.P. (12-year-old son) (collectively, the Step Children).

¶6     Prior to the commencement of this case, A.P., D.L. and four of A.P.'s children (R.P., J.P., J.J.L., R.D.L.L.) lived together.  A.P. alleged that in September 2007 she witnessed D.L. sexually abuse R.D.L.L., and that he may have also sexually abused the Step Children.  Child Protective Services and law enforcement initiated an investigation. Around the same time, D.L. left the home and was incarcerated on a misdemeanor probation violation.  A.P. obtained a restraining order preventing D.L. from being with or contacting her or the children.

2

¶7     During the June 2008 show cause hearing, the state presented statements made by the Step Children through the testimony of Detective Jeff Ivers and the Children's counselors. A.P. did not testify. None of the Children or Step Children testified.

¶8     At the hearing, Ivers testified that in September 2007, A.P. reported to the police that she saw D.L. fondle R.D.L.L.'s testicles when she handed him to D.L. in the bathtub. Detective Ivers also interviewed the stepdaughter, R.P., who said D.L. had put "his private in my private" and that she had seen D.L. slap and hit the other kids. Ivers also interviewed stepson J.P. When Ivers asked J.P. if he knew why Ivers was there, J.P. stated "because his dad swung his baby brother around while he was in his chair." Ivers also testified that J.P. told him that D.L. held the children by their necks and chocked them. Ivers testified that J.P. told him that D.L. had touched J.P.'s private areas.

¶9     Lastly, Ivers interviewed J.M., the oldest stepson. Ivers testified that J.M. told him that D.L. would ask him to sleep on the couch with him and J.M. would wake up to D.L. pulling his pants down to have intercourse. Ivers learned that J.M. had been accused of sexual misconduct the previous year. J.M. told Ivers that D.L. had abused him physically and mentally. Ivers testified that these statements were consistent with J.M.'s statements during the prior investigation. Later in September 2007, social worker Kenn Englehardt spoke with A.P. She again stated that she saw D.L. fondle the youngest child and that one of the children had told her that D.L. had sexually abused them.

¶10    Lastly, the Department called two professional licensed counselors, Larry Lee Powell (Powell) and Roberta Cladouhos-Powell (Cladouhos-Powell). They were

providing counseling services to J.P. and R.P., respectively. Powell had been counseling J.P. "off and on" since January 2007. In October 2007, two weeks after A.P. alleged the sexual misconduct by D.L., J.P. disclosed to Powell that D.L. had physicially and sexually abused him. Powell testified that J.P. told him D.L. kicked, slapped and sexually abused him seven or eight times in the past year. Cladouhos-Powell counseled R.P. since the beginning of 2007. In October 2007, R.P. allegedly revealed to her counselor that D.L. had physically and sexually abused her. Cladouhos-Powell testified that R.P. told her that D.L. would make her take off her clothes, lay on top of him or next to him and move "in certain ways." He would also place his "private" near her "private." Cladouhos-Powell testified that R.P. told her that it happened repeatedly over several years between ages six and ten. Cladouhos-Powell testified that R.P. told her she had not told anyone about the sexual abuse before because D.L. threatened to kill her or turn her in to the Department. She further testified that R.P. said D.L. would kick and punch her and J.P. and that D.L. had picked J.P. up by his neck.

¶11 At the end of the hearing, the District Court entered findings of fact and conclusions of law that probable cause existed to support the allegations of abuse and neglect. The District Court concluded that the Children should be deemed Youths in Need of Care. Even though the District Court found probable cause, the court determined that without considering the hearsay statements of R.P. and J.P., there was insufficient evidence to determine the Children were Youths in Need of Care by a preponderance of

4

the evidence. The District Court allowed the parties to file briefs regarding the admissibility of the above statements.

¶12 The state filed a brief. D.L.'s attorney did not. Under Rule 2(b) of the Unified District Court Rules, D.L.'s failure to file a response brief was deemed an automatic admission. As a result, the District Court ruled in favor of admissibility of the statements under the residual hearsay exception found in M. R. Evid. 803(24) and adjudicated the Children as Youths in Need of Care.

¶13 After the adjudication, the District Court approved treatment plans for D.L. and A.P. D.L. failed to comply with the terms of his treatment plan and the State filed a Petition for Termination of Parental Rights of Father and Dismiss With Custody to Mother. The District Court held an evidentiary hearing and ordered the termination of parental rights. The State argued that ICWA did not apply to these proceedings. In response to an inquiry from the State, the Turtle Mountain Band of Chippewa Indians indicated in a letter that the Children were not eligible or enrolled. At the termination hearing, D.L. testified that he was "affiliated" with the Little Shell Band of Chippewa and that he thought the father of the Children's mother may have connections to the Iroquois tribe. The District Court determined that ICWA did not apply to the case.

**STANDARD OF REVIEW**

¶14 This Court exercises plenary review of whether a parent was denied effective assistance of counsel in abuse and neglect proceedings. *In re C.M.C.*, 2009 MT 153, ¶ 20, 350 Mont. 391, 395, 208 P.3d 809, 813. When reviewing a district court's

5

termination of parental rights, we determine whether the findings of fact are clearly erroneous, whether the conclusions of law are correct and whether the court abused its discretion in ordering termination. *In re T.L.*, 2005 MT 256, ¶ 8, 329 Mont. 58, 60, 122 P.3d 453, 454.

## DISCUSSION

¶15 ***I. Whether D.L. was denied effective assistance of counsel during the adjudication hearing.***

¶16 There is a constitutional right to *effective* assistance of counsel in termination proceedings. *In re A.S.*, 2004 MT 62, ¶ 20, 320 Mont. 268, 273, 87 P.3d 408, 413. When we decided *In re A.S.* in 2004, the right to counsel had not been attached to other stages of termination proceedings. In 2005, the Montana legislature granted indigent parents a statutory right to appointed counsel in all abuse and neglect proceedings involving any petition filed pursuant to § 41-3-422, MCA. Section 41-3-425, MCA. The first seven subsections in § 41-3-422, MCA, list the proceedings to which the right attaches. The eighth subsection states: "any combination of the provisions of subsections (1)(a)(i) through (1)(a)(vii) or *any other relief that may be required for the best interest of the child*." Section 41-3-422(1)(a)(viii), MCA (emphasis added).

¶17 The adjudication provisions in § 41-3-437, MCA, are required to determine and facilitate the best interest of the child. Adjudication hearings "must determine the nature of the abuse and neglect and establish facts that resulted in state intervention and upon which disposition, case work, court review, and possible termination are based."

Section 41-3-437(2), MCA. Absent a valid adjudication pursuant to § 41-3-437, MCA, a district court is without the authority to terminate parental rights under § 41-3-609(1)(f), MCA. As a critical stage in termination proceedings, adjudication hearings invoke the same due process rights that are essential during the termination proceeding. It naturally follows that the "effectiveness" of counsel we deemed essential to due process at termination hearings also applies to pre-termination adjudication proceedings.

¶18   As we stated in *In re A.S.*, "it seems self-evident that the right to counsel carries with it a concomitant requirement that such counsel be effective. In the absence of effective, competent counsel, the right to counsel is reduced to nothing more than a procedural formality." *In re A.S.*, ¶ 20. We emphasized that "if there is no requirement that counsel a parent receives be effective, then the mere act of appointing counsel is meaningless." *In re A.S.*, ¶ 20.

¶19   Because the right to effective assistance of counsel also applies to adjudication hearings, we evaluate the effectiveness of D.L.'s counsel under the two-part effective assistance of counsel test we established in *In re A.S.* We consider the following non-exclusive factors: (1) counsel's training and experience representing parents in termination proceedings, and (2) the quality of advocacy demonstrated at the hearing, including whether counsel made appropriate objections. *In re A.S.*, ¶¶ 26-27. Under the second "advocacy" prong, we consider several aspects of the representation, including: whether counsel has timely and sufficiently met with the parent and has researched the applicable law; whether counsel has prepared for the termination hearing by interviewing

7

the State's witnesses and by discovering and reviewing documentary evidence that might be introduced; and whether counsel demonstrated that he or she possesses trial skills, *including making appropriate objections*, producing evidence, and calling and cross-examining witnesses and experts. *In re A.S.*, ¶ 26 (emphasis added).

¶20 D.L.'s counsel did not object to the hearsay evidence presented during the adjudication hearing and did not file a response to the Department's brief in support of the admission of the evidence. D.L. avers that there "is no plausible reason for not filing a response detailing the applicable law." He further contends that the District Court "adjudicated the children on procedural grounds under Uniform District Court Rules because counsel failed to file any brief in opposition, not because the court found the Department's argument compelling or the evidence sufficient even in the absence of the hearsay."

¶21 During the initial adjudicatory hearing, the Department presented the testimony of four witnesses from which the alleged hearsay resulted: the Step Children's counselors, the social worker, and Ivers. The children never testified and neither did the mother. D.L. argues that, had his counsel properly objected to the hearsay, the trial court "either 1) would have been forced to sustain the objection . . . and there would have been no evidence left in the record on which the court could rely to find the children were in need of care, or 2) would have overruled the objection, thereby preserving the issue for appeal." D.L. argues that his counsel's failure to object and to respond to the

8

Department's brief allowed the District Court to admit the evidence through a mechanism that otherwise would not have been available.

¶22 D.L. contends that his counsel's failure to object to the hearsay evidence presented during the adjudicatory hearing and his counsel's failure to file a brief in opposition to the Department's brief was unreasonably deficient advocacy under the second prong of the test for effective assistance of counsel. We agree. At the adjudication hearing, D.L.'s counsel was deficient under additional factors articulated in the "advocacy" prong of the ineffective assistance of counsel test. His counsel made no objections, asked no questions on cross-examination, and did not meet with his client prior to the hearing or request an extension to do so. Under the second prong of the ineffective assistance of counsel test, we hold that D.L. received ineffective assistance of counsel at the adjudication hearing.

¶23 *II. Whether the District Court properly determined that the ICWA did not apply to this case.*

¶24 At the termination hearing, D.L. listed three tribes he thought either he or A.P. were affiliated with: (1) the Turtle Mountain Band of Chippewa; (2) the Little Shell Band of Chippewa; and (3) the Iroquois tribes. ICWA states: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the . . . termination of a parental rights to an Indian child shall notify . . . the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." 25 U.S.C.

9

§ 1912(a). The Bureau of Indian Affairs Guidelines state that the duty to inquire arises when the court "has reason to believe a child involved in a child custody proceeding is an Indian." Bureau of Indian Affairs Guidelines for State Courts, Indian Child Custody Proceedings, 44 Fed. Reg. 67584, Guideline B.1(a) (Nov. 26, 1979) (BIA Guidelines). ICWA defines an "Indian child" as any unmarried person who is under age eighteen and is either "(a) a member of an Indian tribe; or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); Section 41-3-102(11), MCA.

¶25 D.L. was an enrolled member of the Turtle Mountain Band of Chippewa. After the State sent the tribe an ICWA notice, the tribe responded in a letter that the children "would not be eligible or enrolled with the Turtle Mountain Band of Chippewa Tribe." The District Court's finding with regard to the Turtle Mountain Band was proper.

¶26 At the termination hearing, D.L. testified that he thought he might have connections to the Little Shell Band of Chippewa because of his mother's alleged membership. However, in order for ICWA to apply, the child must be either a member of an Indian tribe or "eligible for membership in an Indian tribe" *and* "the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); Section 41-3-102(11)(b), MCA. Where D.L. could not assert that he himself was enrolled in the Little Shell Band, it cannot be said that the District Court had reason to believe the children qualified as Indian children under either method articulated in the statute. The District Court's finding with regard to the Little Shell Band of Chippewa was not clearly erroneous.

¶27 Lastly, D.L. testified that he had conversations with A.P. regarding what he recalled as potential Iroquois heritage through A.P.'s father. There was no testimony suggesting D.L. was himself a member of the Iroquois tribe. There was also no evidence that A.P. herself was a member or eligible for membership. Therefore, there was no indication that the children could come under ICWA through any Iroquois heritage because there was no evidence indicating that the children were biological children of a member of the tribe. 25 U.S.C. § 1903(4)(b); Section 41-3-102(11)(b), MCA. Further, any connection the children have with the Iroquois tribe through their maternal grandfather was preserved by their mother's continued custody and care. Therefore, the District Court's finding regarding enrolability in the Iroquois tribe was not clearly erroneous.

¶28 For the reasons stated above, we affirm the District Court's determination that ICWA does not apply to this case. We hold that the due process right to *effective* assistance of counsel applies to adjudication hearings. Utilizing the standards we established in *In re A.S.* for evaluating ineffective assistance of counsel claims, we hold that D.L. was denied effective assistance of counsel.

¶29 We reverse and remand for a new adjudication hearing. In the interim, the temporary custody order remains in effect.

/S/ W. WILLIAM LEAPHART

11

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS