DA 09-0636 and DA 09-0637

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 114

IN THE MATTER OF:

B.M. and P.M.

      Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause Nos. DN 07-50 and DN 07-51 Honorable Robert L. Deschamps, III, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Jennifer A. Hurley, Assistant Appellate Defender; Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Jonathan M. Krauss, Assistant Attorney General; Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney; Matthew Lowy, Deputy County Attorney; Missoula, Montana

                         Submitted on Briefs:  April 28, 2010

                                 Decided:  May 25, 2010

Filed:

_____
                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    L.M. appeals the Orders of the Fourth Judicial District Court, Missoula County, terminating his parental rights. We affirm.

¶2    We review the following issues on appeal:

¶3    *Did the District Court abuse its discretion when it terminated L.M.'s parental rights?*

¶4    *Did L.M. receive effective assistance of counsel?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    The District Court terminated L.M.'s parental rights to B.M. and P.M. on October 26, 2009. The children's mother, D.M., did not live with the children and already had voluntarily relinquished her parental rights. The Montana Department of Public Health and Human Services, Child and Family Services Division (Department), removed B.M. and P.M. from L.M.'s care on November 27, 2007, following a psychotic episode by L.M.

¶6    L.M. called the Missoula Police Department on November 27, 2007. L.M. sought help due to a fear that people were following him and a concern that he had been "imagining things." Jim Silva (Silva), social worker and investigator for Child Protection Services, responded to the call. Silva learned that L.M.'s children were on their way home from school with their grandmother, N.S. Silva contacted N.S. to advise her to keep the children away from L.M.'s house while law enforcement responded.

¶7    Silva went to L.M.'s house to conduct an interview. Silva found L.M. outside yelling and screaming. L.M. approached Silva. L.M. lifted up his shirt to show Silva that he was not wired or carrying a weapon. L.M. told Silva that "they" were out to get him, that he was

2

a targeted man, and that "they" were going to execute him. L.M. appeared agitated, anxious, and paranoid during the encounter.

¶8      Officer Ben Woods of the Missoula Police Department responded to Silva's request for assistance. L.M. appeared frightened when Officer Woods contacted him. L.M. refused to leave his house and he expressed fear of the outside world. L.M. admitted to Officer Woods that he had not slept for the previous four days during which time he had been using methamphetamine. Both B.M. and P.M. were inside L.M.'s house at this time. L.M. refused to take his children to school that morning due to his concern that the federal government and the McDonald's corporation were involved in a conspiracy against him.

¶9      Officer Woods described the interior of L.M.'s house as in "disarray." Officer Woods discovered a large revolver on the living room table. Officer Woods spoke with B.M. and P.M. The children confirmed that L.M. would not take them to school due to his conspiracy fears.

¶10     The State removed B.M. and P.M. from L.M.'s care. L.M. voluntarily committed himself to the hospital for a psychological evaluation. L.M. tested positive for methamphetamine and marijuana. The hospital discharged L.M. the same day. Officer Woods drove by L.M.'s house later that day and saw that L.M. had painted "it's not such a happy meal now" on the front of his house.

¶11     The Department eventually filed a petition seeking emergency protective services, adjudication of B.M. and P.M. as youths in need of care, and temporary legal custody. The court granted temporary legal custody to the Department and adjudicated B.M. and P.M. as

youths in need of care. The District Court determined that L.M.'s "drug abuse and apparent mental instability" would place the children at an unreasonable risk of harm. L.M. stipulated to the Department's temporary legal custody of B.M. and P.M. for six months pending his completion of the State's proposed treatment plan. The Department eventually filed a petition for termination of L.M.'s parental rights on April 30, 2009.

¶12　The District Court held a termination hearing over two days in August and September 2009. The State presented testimony of social worker and child protection specialist Meredith Mehne (Mehne) and a report on L.M. prepared by the Court Appointed Special Advocate (CASA). Both Mehne's testimony and the CASA report recommended termination of L.M.'s parental rights based on his failure to comply with his treatment plan. Mehne testified that L.M. had not attempted to perform the tasks in his treatment plan until after the Department filed the termination petition. L.M. admitted that he had failed to comply fully with the treatment plan.

¶13　The District Court determined that L.M. had failed to meet the conditions of his treatment plan. L.M.'s conduct and condition rendered him unfit to provide adequate parental care to his children and that this condition was unlikely to change within a reasonable time. The District Court concluded that clear and convincing evidence supported termination of L.M.'s parental rights. L.M. appeals.

## STANDARD OF REVIEW

¶14　We review for abuse of discretion a district court's termination of parental rights. *In re J.A.S.*, 2010 MT 47, ¶ 11, 355 Mont. 302, ___ P.3d ___. We determine whether the

4

district court's findings of fact are clearly erroneous and whether the conclusions of law are correct. *In re J.J.L.*, 2010 MT 4, ¶ 14, 355 Mont. 23, 223 P.3d 921. This Court exercises plenary review of whether a parent was denied effective assistance of counsel. *In re J.J.L.*, ¶ 14.

## DISCUSSION

¶15 *Did the District Court abuse its discretion when it terminated L.M.'s parental rights?*

¶16 Neither party disputes that the District Court properly adjudicated B.M. and P.M. as youths in need of care. L.M. admitted that he had not complied fully with his treatment plan. L.M. admitted that his house was "not suitable for children" because of his remodeling work. L.M. further admitted that he had not completed a chemical dependency course. L.M. tested positive for methamphetamine and marijuana "many" times during his required urinalysis tests. L.M. failed to complete his psychological evaluation. L.M. never communicated with his children's therapists. Whether L.M.'s conduct or condition rendering him unfit was likely to change within a reasonable time presents the only remaining issue.

¶17 L.M. first argues that the District Court improperly adopted "nearly verbatim" the State's proposed findings of fact. A review of the termination hearing transcript reveals, however, that the District Court properly considered all the facts and testimony before it. *In re A.R.*, 2005 MT 23, ¶ 29, 326 Mont. 7, 107 P.3d 457. The court exercised its independent judgment in terminating L.M.'s parental rights. *In re A.R.*, ¶ 29.

¶18 In determining whether the conduct or condition of the parent is unlikely to change within a reasonable time, the district court must enter a finding that continuation of the relationship likely will result in continued abuse or neglect or that the parent is unfit to give the children adequate care. Section 41-3-609(2), MCA. The court must give primary consideration to the physical, mental, and emotional conditions and needs of the children. Section 41-3-609(3), MCA.

¶19 Section 41-3-604(1), MCA, provides that the best interests of the child must be presumed to be served by termination of parental rights if a child has been "under the physical custody of the state" for 15 months of the most recent 22 months. L.M. argues that the statutory presumption should not apply because B.M. and P.M. were in the "physical custody" of N.S., their grandmother, rather than of the State. L.M. neglects to mention that B.M. and P.M. lived with N.S. pursuant to a foster care agreement with the Department. N.S. cared for the children under a "foster care program," where "the ultimate decision is the State's." N.S. received $1,000 a month under the foster care agreement to support the children. B.M. and P.M. had been "in foster care under the physical custody of the state for 15 months of the most recent 22 months." Section 41-3-604(1), MCA. The District Court correctly relied upon the statutory presumption that the best interests of B.M. and P.M. would be served by termination of L.M.'s parental rights.

¶20 The District Court further entered findings that continuation of the relationship likely would have resulted in continued abuse or neglect and that L.M. was unfit to give the children adequate care. Section 41-3-609(2), MCA. L.M. admitted that his house had been

unlivable for the children and that he was not financially stable. N.S., L.M.'s own mother, similarly did not believe L.M. would be able to care for the children anytime soon "because he has a lot of mending to do." The court's determination that L.M.'s conduct was not likely to change required "a predictive assessment based upon past and present conduct of the parent." *In re C.M.C.*, 2009 MT 153, ¶ 25, 350 Mont. 391, 208 P.3d 809. Clear and convincing evidence supported the District Court's assessment. *In re A.R.*, ¶ 31.

¶21    *Did L.M. receive effective assistance of counsel?*

¶22    L.M. argues that his counsel's failure to advocate for appropriate alternatives to termination rises to the level of ineffective assistance of counsel. This Court reviews a trial counsel's 1) training and experience, and 2) advocacy skills, in determining whether assistance was ineffective. *In re A.S.*, 2004 MT 62, ¶ 26, 320 Mont. 268, 87 P.3d 408. Only if the parent suffered prejudice, however, will this Court determine that trial counsel's ineffective performance warrants reversal. *In re A.S.*, ¶ 31. Nothing in the record reveals that L.M.'s counsel lacked adequate training and experience to represent L.M. or that his counsel's advocacy skills were ineffective.

¶23    The District Court had to decide whether to grant the Department's petition for termination of L.M.'s parental rights. L.M.'s trial counsel argued against granting the petition. The question of alternatives to termination would have arisen only if the court had decided to deny the Department's petition to terminate. *In re C.M.C.*, ¶ 35. L.M. has not made any showing that his trial counsel's failure to argue for an alternative to termination

materially prejudiced him, or that this failure would have affected whether the court decided to grant the petition to terminate. *In re C.M.C.*, ¶ 35.

¶24     Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE