DA 14-0203

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 278N

IN THE MATTER OF:

K.M.L., T.J.L., and T.J.L.,

      Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause Nos. DN-12-064(D), DN-12-65(D), and DN-12-66(D) Honorable David M. Ortley, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Lucy W. Hansen, Attorney at Law, Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schultz, Assistant Attorney General, Helena, Montana

          Emily Von Jentzen, Assistant Attorney General, Kalispell, Montana

Submitted on Briefs:  September 24, 2014
Decided:  October 14, 2014

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On March 11, 2014, the Eleventh Judicial District, Flathead County, entered its Findings of Fact, Conclusions of Law, and Order terminating A.W. and T.J.L.'s parental rights to T.J.L.1, T.J.L.2, and K.M.L. (hereinafter "the children"). Only T.J.L. appeals. T.J.L. contends that his treatment plan was inappropriate and that the District Court abused its discretion when it terminated his parental rights after finding his conduct unlikely to change within a reasonable amount of time. We affirm.

¶3 On July 10, 2014, this Court entered an Order consolidating Cause Nos. DA 14-0203, DA 14-0204, and DA 14-0205 for purposes of appeal under Cause No. DA 14-203.

## FACTUAL BACKGROUND

¶4 On October 5, 2012, the Department of Health and Human Services (DPHHS) petitioned for emergency protective services for A.W. and T.J.L.'s three young children. DPHHS first removed the children from the parents' home, citing concerns over the parents' substance abuse issues and criminal activity. The children returned to their parents on November 16, 2012, but were removed again on December 6, 2012. Since

that time, the children have resided with a foster family. The District Court adjudicated the children as youths in need of care in January 2013.

¶5 In February 2013, the District Court approved a treatment plan for T.J.L. Although T.J.L. was not present at the final treatment plan hearing, his attorney was present. The treatment plan required T.J.L. to complete a number of tasks including: obtain a chemical dependency evaluation, establish and maintain a residence, submit a written budget, attend parenting classes, and maintain contact with his social worker.

¶6 DPHHS's concerns regarding T.J.L. centered on his criminal activity and drug use, particularly when it occurred while he cared for his children. DPHHS had a substantiated report establishing that T.J.L. drove while under the influence of cocaine and alcohol with his child in the car. The incident resulted in a roll-over car accident. In addition, T.J.L. had multiple criminal charges related to the distribution of drugs pending against him. T.J.L. was arrested in March 2013, and again for violation of conditions of his release in April 2013. In August 2013, a court sentenced T.J.L. to ten years, with five suspended. After sentencing, he was screened by the Department of Corrections and placed at Connections Corrections in December 2013.

¶7 In January 2014, DPHHS filed a Petition for Permanent Legal Custody, Termination of Parental Rights with Right to Consent to Adoption. DPHHS argued that T.J.L. had failed to successfully complete his treatment plan and his conduct was unlikely to change within a reasonable time. The District Court conducted a termination hearing on March 10 and 11, 2014. T.J.L. was present with counsel. The District Court heard

testimony from ten witnesses, including the biological parents, CPS worker Cindy Char, the children's therapist, and the foster father.

¶8 T.J.L. argues that the termination lacked fundamental fair procedures and urges this Court to remand to the District Court with instructions to complete an appropriate treatment plan. T.J.L. believes his treatment plan was unworkable as he was incarcerated for nearly the entirety of the plan, making it impossible to complete. He further maintains that he completed the Connections Program at pre-release, participated in a "Dad's Group," obtained multiple jobs, had no violations while in custody, and maintained sobriety for nearly a year.

## STANDARD OF REVIEW

¶9 We review a district court's termination of parental rights for an abuse of discretion. *In re H.R.,* 2012 MT 290, ¶ 9, 367 Mont. 338, 291 P.3d 583. A court may terminate parental rights "if the child has been adjudicated as a youth in need of care, the parent has failed to comply with an appropriate treatment plan, and the conduct or condition rending the parent unfit is unlikely to change within a reasonable time." Section 41-3-609(1)(f), MCA; *In re H.R.*, ¶ 9. We review findings of fact for clear error and conclusions of law for correctness. *In re H.R.*, ¶ 9 (citations omitted).

## DISCUSSION

¶10 *Did the District Court abuse its discretion when it approved the treatment plan?*

¶11 When considering termination of parental rights, a district court must ask whether "an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful." *In re D.B.,* 2012 MT 231, ¶ 19, 366

Mont. 392, 288 P.3d 160; § 41-3-609(1)(f)(i), MCA. There is no litmus test for the appropriateness of treatment plans. *In re A.C.*, 2001 MT 126, ¶ 26, 305 Mont. 404, 27 P.3d 960. Rather, when evaluating the treatment plan, the Court considers "whether the parent was represented by counsel, whether the parent stipulated to the treatment plan, and whether the treatment plan takes into consideration the particular problems facing both the parent and the child." *In re H.R.*, ¶ 10 (citations omitted). A parent must object to the treatment plan's goals or risk waiving the right to challenge the appropriateness on appeal. *In re H.R.*, ¶ 10 (citations omitted).

¶12 In the case at bar, T.J.L. was not present at the treatment plan hearing; however, his lawyer was present and did not object to the treatment plan. T.J.L.'s lawyer fully participated in the hearing, as evidenced by her objection to certain proposed conditions, which were subsequently removed, and her negotiations over two other provisions (i.e., sharing of confidential information and the residence requirement). The transcript shows that after the negotiations, T.J.L.'s counsel stipulated to the treatment plan.

¶13 Although T.J.L.'s lawyer failed to object to the treatment plan, we nevertheless note that substantial evidence supports the District Court's finding that the plan was appropriate considering the particular problems facing T.J.L. and the children. The record indicates that T.J.L. had multiple months before sentencing to work on his treatment plan. Any tasks that T.J.L. could have completed while incarcerated or during his periods not incarcerated are appropriate. *In re D.B.*, 2004 MT 371, ¶ 52, 325 Mont. 13, 103 P.3d 1026. If T.J.L. had remained law abiding, he could have completed a number of the tasks in the period from February to August. Instead, his actions led him

to be arrested twice and jailed from April to August. T.J.L.'s failure to complete treatment goals is the result of his own criminal behavior and DPPHS will not be faulted for it. *In re D.S.B.*, 2013 MT 112, ¶ 15, 370 Mont. 37, 300 P.3d 702. It is clear from our review of the record that the District Court correctly determined that T.J.L.'s treatment plan was appropriate.

¶14 *Did the District Court abuse its discretion in determining that T.J.L. would be unlikely to change within a reasonable amount of time?*

¶15 Before terminating parental rights, a district court must find that the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f)(ii), MCA. The most significant factor is the physical, mental, and emotional needs of the child and the parent's ability to meet those needs within a reasonable time. Section 41-3-609(3), MCA. Other factors include parental mental health, substance abuse problems, a history of violent behavior, and long-term incarceration. Section 41-3-609(2)(a)-(d), MCA.

¶16 T.J.L. argues that the District Court erred by finding him unlikely to change. He maintains that his conduct does not meet any of the statutory factors listed in § 41-3-609(2), MCA. He points to his completion of treatment and sobriety as evidence of his ability to change. Lastly, he argues that the District Court should have created a two-phase treatment plan to accommodate his time in custody.

¶17 The District Court did not err in concluding that T.J.L.'s conduct was unlikely to change within a reasonable time. While this Court does not discount the sincerity of T.J.L.'s wishes to reunite with his children, we are guided by the principle of the best

interest of the child. Section 41-3-609(3), MCA; *In re A.S.*, 2006 MT 281, ¶ 25, 334 Mont. 280, 146 P.3d 778 (citations omitted).

¶18 When assessing whether a parent's conduct is likely to change, a district court must examine both past and present conduct. *In re C.M.C.*, 2009 MT 153, ¶ 25, 350 Mont. 391, 208 P.3d 809 (citations omitted). While T.J.L. points to his maintained sobriety, it occurred during a period of time in which he was incarcerated and under strict supervision. Prior to his incarceration, T.J.L. had a lengthy history of criminal conduct, most notably during the time he was supposed to be working on treatment plan goals. Additionally, T.J.L. has a history of substance abuse, failure to comply with drug testing requirements, and invalid chemical dependency evaluations due to dishonesty.

¶19 The District Court's finding aligns with the best interest of the children. At the time of termination, the children had been living with foster parents for at least fifteen of the most recent twenty-two months. The testimony of the children's therapist confirmed that the foster home was a beneficial environment that served the best interest of the children. The District Court properly found that the children's need for a safe and stable environment could not be provided by T.J.L. in a reasonable amount of time and the children's needs trumped T.J.L.'s request for additional time to comply with his treatment plan.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are

controlled by settled Montana law, which the District Court correctly interpreted.  The

District Court did not abuse its discretion in terminating T.J.L.'s parental rights.

¶21     Affirmed.


                                                /S/ MIKE McGRATH


We Concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE