DA 15-0482

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 89N

IN THE MATTER OF:

N. A., A.A., N.A., and Z.A.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. BDN-13-160,
BDN-13-161, BDN-13-162, BDN-13-163
Honorable Thomas McKittrick, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jill A. Hughes, Matrium Law Group, PLLC, Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

        John Weston Parker, Cascade County Attorney, Valeria Winfield, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  March 23, 2016

Decided:  April 12, 2016

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     This case pertains to the termination of the parental rights of A.A. to his four children, N.A., A.A., N.A., and Z.A. The children were placed into protective custody on April 6, 2013. Temporary Legal Custody was granted to the Department of Public Health and Human Services ("DPHHS") on January 30 2014, and the children were adjudicated as Youths in Need of Care the same day. The State petitioned the court to terminate the parent-child relationship on January 15, 2015, and a hearing was held over two days on June 18 and July 2, 2015. A written order terminating the parental rights of A.A. was signed on July 23, 2015. A.A. appeals. We affirm.

¶3     On April 6, 2013, N.A. was born and DPHHS received information regarding threatening and abusive behavior directed at the birth mother from the natural father, A.A. DPHHS determined based on previous criminal history and abusive behavior that the children should be taken into the care of DPHHS. Over the following months, there were several instances during which A.A. intimidated his family members and verbally and physically abused them.

¶4 On February 9, 2014, a treatment plan was adopted. Among other tasks, the treatment plan acknowledged that A.A. had mental health issues and imposed psychiatric treatment requirements consistent with the goal of A.A. acquiring the necessary skills to provide for his children's' safety, permanency, and well-being.

¶5 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re K.A.*, 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478. As a general rule, we will not consider novel issues, or new arguments on appeal. *Siebken v. Voderberg*, 2015 MT 296, ¶ 19, 381 Mont. 256, 359 P.3d 1073; *Day v. Payne*, 280 Mont. 273, 276, 929 P.2d 864, 866 (1996).

¶6 Proceedings to terminate parental rights follow strict statutory criteria. *In re J.W.*, 2013 MT 201, ¶ 26, 371 Mont. 98, 307 P.3d 274. Title 41 of the Montana Code outlines the statutory framework under which a court may assess the appropriateness of terminating parental rights. *See* § 41-3-602, MCA. In making its assessment the court is obliged to "give primary consideration to the physical, mental and emotional conditions and needs of the child." Section 41-3-609(3), MCA. If an appropriate treatment plan has been approved but not successfully completed, the court may terminate parental rights if it finds that a "continuation of the parent-child relationship will likely result in continued abuse or neglect." Section 41-3-609(2), MCA. Furthermore, if a child has been in the "physical custody of the State for the last 15 months out of the most recent 22 months, the best interest of the child must be presumed to be served by the termination of parental rights." Section 41-3-604(1), MCA.

¶7 A.A. submits two arguments on appeal. First, A.A. invites this Court to consider the applicability of the Americans with Disabilities Act and related federal provisions ("ADA"). He posits that the treatment plan violated several provisions of the federal law, which is liberally cited and extensively covered in his appellate brief. A.A. posits that federal law would have mandated a modification of the treatment plan to better suit his mental health issues. However, none of these arguments or citations occur in the record and none were presented to the District Court. We have consistently held that introducing new legal arguments on appeal undermines the justice system and is substantially unfair to the parties. *Payne*, 280 Mont. at 276-77, 929 P.2d at 866. That rule is an essential aspect of litigation because "[i]t is based on the principle that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Payne*, 280 Mont. at 276-77, 929 P.2d at 866. A.A. argues that although he never cited federal law or mentioned the ADA before the District Court, doing so is not required under *Nason v. Leistiko*, 1998 MT 217, ¶ 18, 290 Mont. 460, 963 P.2d 1279. A.A. claims that the sporadic references in the record to his needing greater accommodation for his mental health were "clearly rooted" in the ADA, and that the federal nature of these references was apparent to "any party with legal training." However, whether the ADA was invoked or not, the court did consider the seriousness of the mental health issues involved in reviewing the scope of A.A's treatment plan.

¶8 The District Court found that A.A. demonstrated some inconsistent progress in addressing his mental health issues, but his "emotional deregulation" still posed a serious

4

problem for the children. Although there was evidence to suggest that A.A. had an intellectual disability, other evidence undermined the significance of those evaluations. Testimony from a mental health professional showed that A.A. "appeared to have fabricated being in treatment for brain cancer to manipulate the behaviors and feelings of others towards him." The testimony also showed that he remained "motivated to present himself in a positive light, . . . externalized blame," and "provided numerous invalid results to tests administered during the [psychological] evaluation[s]."

¶9 Notwithstanding the presence of remarks regarding the mental health accommodations A.A. requested in the record, the appeal still presents a new legal argument because it relies on law that was never introduced to the District Court. A.A.'s argument is especially unpersuasive because neither the District Court nor the State had an opportunity to consider the issue A.A. now raises on appeal. *Payne*, 280 Mont. at 276-77, 929 P.2d at 866. Consequently, we decline to address the applicability of the ADA in this appeal.

¶10 Second, A.A. claims that the District Court made an erroneous conclusion of law by adopting a presumption that termination of parental rights was in the best interests of the child because they had been in foster care for 27 months. A.A. argues that the time period did not begin to run until after DPHHS received legal custody of the children, which did not occur in this case until January 30, 2014. This argument is unpersuasive because DPHHS became involved and controlled access to the children from April 6, 2013. The children were kept at the grandparent's home under the supervision and control of DPHHS. It is not necessary for DPHHS to place the children directly in a state

5

institution for purposes of § 41-3-604(1), MCA. *See In re B.M.*, 2010 MT 114, ¶ 20, 356 Mont. 327, 233 P.3d 338.

¶11 Furthermore, the District Court did not rely on the presumption for the termination of A.A.'s parental rights. The District Court found by clear and convincing evidence that continuation of the parent-child relationship between A.A. and the children would result in ongoing risk of abuse and neglect to the youths, and that the Department more than adequately satisfied the statutory requirements to offer services to A.A. to address the underlying safety concerns and facilitate reunification prior to initiating the petition for termination of parental rights. The court further concluded that the conduct or condition rendering birth father unfit and unable to parent was unlikely to change within a reasonable time. Thus, upon review of the record we cannot agree that the District Court abused its discretion.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, this case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶13 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ JIM RICE