FILED

April 28 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 14-0570

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 117

IN THE MATTER OF:

T.N.-S., N.N.-S., E.N.-S., and A.N.-S.,

      Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District,<br>In and For the County of Lewis and Clark, Cause Nos. DDN 2013-3,<br>DDN 2013-4, DDN 2013-5, and DDN 2013-6<br>Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Elizabeth Thomas, Elizabeth Cunningham Thomas, PLLC; Missoula, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General; Helena, Montana

            Leo Gallagher, Lewis and Clark County Attorney, Ann Penner, Deputy County Attorney; Helena, Montana

                        Submitted on Briefs:  February 25, 2015
                                    Decided:  April 28, 2015

Filed:

_____
                    Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Birth mother, R.N.-S., appeals an order of the First Judicial District Court, Lewis and Clark County, terminating her parental rights to her four children, T.N.-S., N.N.-S., E.N.-S., and A.N.-S. We affirm.

¶2 The issues on appeal are:

1. *Was the treatment plan appropriate when it did not require Mother to obtain a chemical dependency evaluation, despite chemical dependency being the source of Mother's parenting deficiencies?*

2. *Was Mother's counsel ineffective for failing to advocate for inclusion of a chemical dependency evaluation in the treatment plan?*

3. *Was the District Court required to disclose to the parties transcripts of its in-chambers interviews with the children?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 The appellant (Mother) is mother of the four children at issue in this case: T.N.-S., N.N.-S., E.N.-S., and A.N.-S. At the time of the termination hearing, the children were ages 15, 12, 9, and 4, respectively.

¶4 In October 2012, the Department of Health and Human Services (the Department) received a report that Mother and Father were using drugs and alcohol, were failing to supervise the children while under the influence, lacked housing, and were unable to provide for their children's basic needs. The Department contacted the parents, who agreed to place the children with Mother's sister and enter into a voluntary services agreement. The parents were required to submit to drug tests and, after two clean drug tests from each parent, the children were returned. A third drug test of the Father was

2

positive for methamphetamine. The Department attempted to locate the family when it received the positive test result, but was unable to do so.

¶5 On January 3, 2013, the Department contacted the parents regarding another report indicating that the parents were again unable to care for the children due to drug use. The parents again entered into a voluntary services agreement. The parents were asked to submit to drug tests again and to meet with a Child Protection Specialist (CPS). Both parents failed to show up for drug tests or meetings with the CPS. Mother scheduled a later meeting with the CPS but failed to show up. On January 24, 2013, Mother finally attended a meeting with the CPS and told the CPS that she and Father were selling drugs to survive.

¶6 On January 30, 2013, the Department petitioned to have the children adjudicated youths in need of care. On May 13, 2013, the District Court held a hearing on the Department's petition and adjudicated the children youths in need of care. In July 2013, the District Court adopted the treatment plan agreed to and signed by Mother and her attorney.

¶7 The treatment plan set out several treatment goals and objectives for Mother. Relevant to the issues on appeal, were the following goals: goal number 2 for Mother was "To assess and improve [Mother's] mental health status." Under that goal, Mother was required to complete a psychological evaluation and follow through with all recommendations of the evaluator. Goal number 3 for Mother was "To address [Mother's] chemical dependency issues (drug/alcohol) and remain chemically free." Under that goal, Mother was required to remain free from drugs and alcohol and submit

to random drug and alcohol testing. The treatment plan did not require Mother to complete a chemical dependency evaluation. Neither Mother nor her attorney objected to any part of the treatment plan.

¶8 In August 2013 and again in September 2013, Mother tested positive for methamphetamine. In October 2013, Mother was arrested for drug possession and was incarcerated from December 18, 2013, through March 19, 2014. In March 2014, Mother was accepted into Treatment Court. In Treatment Court, Mother was required to submit to random drug testing, attend weekly court hearings, participate in intensive outpatient therapy and individual counseling, and attend Alcoholics Anonymous or Narcotics Anonymous meetings.

¶9 On March 28, 2014, the Department petitioned the District Court to terminate Mother's parental rights to all four children. The District Court held a termination hearing over two days, June 24 and 27, 2014. At the hearing, the CPS testified that Mother failed to complete several key tasks in her treatment plan, including attending a parenting course. The CPS identified the primary goal of the treatment as getting Mother evaluated by professionals and then having Mother follow through on the professionals' treatment recommendations, particularly to deal with her drug abuse. The CPS testified that the primary evaluation was the psychological evaluation conducted by Dr. Bowman Smelko, PsyD, whose primary recommendation was that Mother engage in substance abuse treatment. Dr. Smelko's report noted that Mother had already been through a period of detox due to her incarceration and she might be able to begin inpatient

4

treatment. The report also recommended Dialectical Behavioral Therapy (DBT) to address the substance abuse and emotional and behavioral issues.

¶10 The CPS further testified that Mother was given a list of chemical dependency evaluators, told she could get an evaluation, and told the Department would pay for any recommended treatment if the evaluation found Mother needed it. However, Mother never pursued an evaluation. The CPS testified that Mother should be commended for her successes in Treatment Court, but that she had only been sober for a short period of time and was not likely to be able to handle raising four kids single-handedly in the near future. The CPS testified that the Department was pursuing termination because Mother had only minimally complied with her treatment plan and it was unlikely Mother would be prepared to care for the children in a reasonable amount of time.

¶11 Dr. Smelko testified that he completed a psychological evaluation with Mother while she was in jail on the drug charges. Before the evaluation, Dr. Smelko examined information from the affidavits filed in the petition for adjudication of the children as youth in need of care, medical reviews, and drug screenings. Dr. Smelko then interviewed Mother and administered a battery of tests. Mother admitted to extensive drug use, particularly of methamphetamine. Based on all the information he gathered, Dr. Smelko opined that Mother's drug abuse was the primary concern in Mother's ability to parent.

¶12 The guardian ad litem for the children, a CASA volunteer, testified that she believed termination was in the best interests of the children and expressed her support for the Department's petition to terminate. The child and family therapist similarly

5

testified that she believed termination of Mother's parental rights was in the best interests of the children, particularly because the oldest had assumed the role of a parent to his younger siblings. The therapist further testified that she believed termination was best because the children were all "in limbo" while they waited to find out what their permanent arrangement would be, which would likely make it difficult for them to develop attachments to Mother. The current foster mother of the three older children testified that the children had made great progress in the year they had been with her, but were experiencing confusion and uncertainty about the future. The foster mother expressed concern that the children would backslide on the progress they had made if they were returned to their Mother at this point.

¶13 Mother's probation officer, treatment court coordinator, and individual counselor all testified that Mother was demonstrating commitment to her recovery, meeting all the requirements of Drug Treatment Court, and making good progress since beginning Drug Treatment Court. The probation officer testified that if Mother stayed on track, she would finish the Treatment Court program in September 2015. Mother testified that she was doing well in Treatment Court, and was 72 days sober at that point. Mother further testified that drug treatment was never offered to her by the Department and that she could not comply with the treatment plan while she was still using drugs. Mother specifically disputed the CPS's testimony that the CPS had offered Mother a chemical dependency evaluation and treatment.

¶14 On the second day of the hearing, the District Court conducted in-chambers interviews with each of the three oldest children in the presence of a court reporter. The

6

District Court told the children that the court was required to create a transcript of the interviews, but that the parties and their lawyers would not see the transcripts of the interviews. Mother's attorney requested transcripts of the interviews, but the District Court denied the request.

¶15 After the hearing, the District Court issued its findings of fact, conclusions of law, and order terminating Mother's rights. The District Court found that termination was appropriate under § 41-3-609(1)(f), MCA, because the children were previously adjudicated youths in need of care, an appropriate treatment plan approved by the court was not completed by Mother, and the conduct or condition rendering Mother unfit was unlikely to change within a reasonable time. In accordance with § 41-3-609(2)(c), MCA, the District Court determined the conduct or condition rendering Mother unfit was unlikely to change in a reasonable time because of Mother's drug problems. The District Court concluded that the best interests of the children dictated termination of Mother's rights, and that the children's best interest outweighed Mother's rights. Mother appeals that order.

## STANDARD OF REVIEW

¶16 We review for an abuse of discretion a district court's termination of parental rights. A district court abuses its discretion when it "acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *In re R.M.T.*, 2011 MT 164, ¶ 26, 361 Mont. 159, 256 P.3d 935. We review the District Court's findings of fact to determine whether they are clearly erroneous.

7

*In re D.B.*, 2007 MT 246, ¶ 18, 339 Mont. 240, 168 P.3d 691.  We review the district court's conclusions of law to determine whether they are correct.  *In re D.B.*, ¶ 18.

¶17    This Court exercises plenary review of whether a parent was denied effective assistance of counsel in termination proceedings.  *In re C.M.C.*, 2009 MT 153, ¶ 20, 350 Mont. 391, 208 P.3d 809.

## DISCUSSION

¶18    *1. Was the treatment plan appropriate when it did not require Mother to obtain a chemical dependency evaluation, despite chemical dependency being the source of Mother's parenting deficiencies?*

¶19    Mother argues that the treatment plan's lack of appropriate diagnosis and treatment of the source of her parenting problems—her drug addiction—set her up for failure.  The Department points out that a primary goal of the treatment plan was to address Mother's drug abuse and argues that the CPS gave Mother the opportunity and information to obtain a chemical dependency evaluation and any recommended treatment, but that Mother did not pursue that opportunity.

¶20    The right to parent a child is a fundamental liberty interest, and it must be protected by fundamentally fair procedures.  *In re D.B.*, ¶ 17.  Before a court may terminate parenting rights, there must be an "appropriate" treatment plan that the parent failed to comply with.  Section 41-3-609(1)(f), MCA.  This Court has not specifically defined what constitutes an "appropriate" treatment plan as a matter of law and, indeed, no such bright-line definition is possible given the unique circumstances existing in each case.  *In re M.M.*, 271 Mont. 52, 56, 894 P.2d 298, 301 (1995).  In determining whether a treatment plan was appropriate, one consideration is whether the parent was represented

8

by counsel and stipulated to the treatment plan. *In re M.M.,* 271 Mont. at 56, 894 P.2d at 301. Here, both Mother and her counsel stipulated to the treatment plan. While this fact does not establish that the plan was appropriate, it is entitled to consideration. *In re M.M.,* 271 Mont. at 56, 894 P.2d at 301.

¶21 By statute, every treatment plan must identify the problems or conditions that resulted in the abuse or neglect of the child and treatment goals and objectives that will address those conditions. Section 41-3-443(2), MCA. The particular problems facing both the parent and the child should also be considered in determining the appropriateness of a treatment plan. *In re M.M.,* 271 Mont. at 56, 894 P.2d at 301. The statute addressing treatment plans specifically lists the requirement that the parent "obtain and follow through with alcohol or substance abuse evaluation and counseling, if necessary" as a permissible provision in a treatment plan. Section 41-3-443(3)(d), MCA.

¶22 Mother argues that the Department's and District Court's failure to include the requirement that Mother obtain and follow through with a substance abuse evaluation and treatment made the treatment plan ineffective, and left Mother ill equipped to complete the plan's requirements in a reasonable time. We admit that it is difficult to understand why the treatment plan did not require substance abuse evaluation and treatment when it was apparently clear to everyone involved that the primary problem with Mother's parenting was her substance abuse. Moreover, § 41-3-443(3)(d), MCA, specifically contemplates that chemical dependency evaluation and treatment will be appropriate requirements in some circumstances, and the circumstances here would certainly seem to

9

warrant that requirement. However, the treatment plan's omission of that requirement does not necessarily render it inappropriate.

¶23 Mother's argument rests on the assumption that she would have gotten sober and been able to complete her treatment plan if she had been required to receive a chemical dependency evaluation and complete treatment. As evidence of this, she points to her success in Drug Treatment Court which she views as her first opportunity for drug treatment.

¶24 However, Mother received the functional equivalent of a chemical dependency evaluation, and she was at least offered treatment through the Department, if not required to seek it. In his psychological evaluation, Dr. Smelko found that Mother had a serious drug problem and recommended treatment. We see no functional distinction between Dr. Smelko's evaluation, which concluded Mother suffered a serious drug problem that required treatment, and a chemical dependency evaluation, which presumably would have come to the same conclusion. Moreover, the CPS testified that she gave Mother a list of chemical dependency evaluators and informed Mother that the Department would pay for an evaluation and any recommended treatment. Mother disputes that she was ever offered chemical dependency evaluation or treatment. It is apparent, however, that the District Court credited the CPS's testimony over Mother's. As an appellate court, we must accept the District Court's credibility determination. *See* M. R. Civ. P. 52(a)(6) ("the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility"); *Garrison v. Averill*, 282 Mont. 508, 518, 938 P.2d 702, 708 (1997) (in the face of conflicting testimony, "it is within the province of the trier of fact

to weigh the evidence and determine the credibility of witnesses; we will not substitute our judgment for that of the trier of fact on such matters").

¶25 In essence, the difference between what Mother received and what she argues she should have received is the difference between being *offered* help with her drug problem, and being *required* to get help with her drug problem. The treatment plan identified Mother's drug problem as a major source of Mother's parenting problems. The only task it required her to complete in order to address her drug problem, however, was to abstain from all drugs and alcohol. While it is reasonable to assume that an addict will require help to abstain from drugs and alcohol, Mother was offered that help when the CPS gave her a list of chemical dependency evaluators and told her the Department would pay for the evaluation and any recommended treatment. The treatment plan Mother received required her to remain drug free and left it to Mother and the Department to work out how to accomplish that objective; the plan Mother argues she should have received would have required what was only offered. The difference between these two plans does not render the approved plan inappropriate.

¶26 More importantly, the District Court's termination order is largely predicated on the needs of the children, rather than Mother's failure to complete the treatment plan. We have long held, and the District Court correctly noted, that "the best interests of the children are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights." *In re D.A.*, 2008 MT 247, ¶ 21, 344 Mont. 513, 189 P.3d 631; *In re C.A.R.*, 214 Mont. 174, 182, 693 P.2d 1214, 1219 (1984); *In re Bad Yellow Hair*, 162 Mont. 107, 112, 509 P.2d 9, 12 (1973). A child's need for a permanent

11

placement in a stable, loving home supersedes the right to parent a child. *In re D.A.*, ¶ 21. For that reason, the law requires that, "[i]f a child has been in foster care under the physical custody of the state for 15 months of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights." Section 41-3-604(1), MCA.

¶27 Even if we assume for the sake of argument that failing to require a chemical dependency evaluation and treatment violated Mother's rights, the children's best interests outweigh Mother's right to parent. Mother does not argue that the District Court's conclusion that termination was in the best interests of the children was incorrect, and our review of the record shows it was supported by sufficient evidence. The children had already been in foster care for over 15 months, giving rise to the statutory presumption that their best interest was served by termination of Mother's rights. Section 41-3-604(1), MCA. The testimony at the hearing demonstrated that Mother would require at least six to nine months more sobriety before she would be stable enough to parent, and the Department had legitimate concerns about Mother's ability to provide housing and financial support for four children by herself while trying to meet all of the demands of Drug Treatment Court and the difficulties of early sobriety. The guardian ad litem, child protection specialist, and family therapist all testified that termination of Mother's rights was in the children's best interest.

¶28 Mother requests that we remand to the District Court with instructions to give her more time to prove her sobriety and work her treatment plan. It is not reasonable, however, for the courts to force children to adjust their timelines and subordinate their

12

needs to meet their parents' timelines. *See, e.g.*, *In re D.A.*, ¶ 26 (holding that, while parents were making progress in getting sober and completing their treatment plans, the district court did not abuse its discretion when it concluded the best interests of the children weighed against giving the parents more time to complete their treatment plans). Although Mother is to be commended for her efforts and success in maintaining her sobriety thus far, granting the relief she requests would necessarily mean placing her rights above the best interests of the children—that we cannot do.

¶29    *2.    Was Mother's counsel ineffective for failing to advocate for inclusion of a chemical dependency evaluation in the treatment plan?*

¶30    Mother argues that her counsel was ineffective for failing to object to the treatment plan when it did not require a chemical dependency evaluation and treatment. In a termination of parental rights proceeding, a parent has a due process right to effective assistance of counsel. *In re A.S.*, 2004 MT 62, ¶ 20, 320 Mont. 268, 87 P.3d 408. This Court has adopted "benchmark, although nonexclusive, criteria" for evaluating effectiveness of counsel in termination proceedings. *In re A.S.*, ¶ 27. The first factor requires consideration of counsel's experience and training representing parents in termination proceedings, and the second is the quality of advocacy demonstrated at the hearing. *In re C.M.C.*, 2009 MT 153, ¶ 30, 350 Mont. 391, 208 P.3d 809 (*citing In re A.S.*, ¶ 26). Even if counsel's performance is found to be ineffective under these criteria, the parent must have suffered prejudice as a result. *In re C.M.C.*, ¶ 30 (*citing In re A.S.*, ¶ 31). Mother requests that we remand to the District Court for further factual development of the record regarding the criteria for evaluating effectiveness of counsel in

13

a termination proceeding. *See In re Mental Health of K.G.F.*, 2001 MT 140, ¶ 93, 306 Mont. 1, 29 P.3d 485 (remanding for a hearing to develop the factual record regarding counsel's effectiveness).

¶31 Mother's claim of ineffective assistance of counsel suffers the same problems as Mother's argument that the treatment plan was inappropriate. The difference between the treatment plan Mother received and the one she argues she should have received boils down to the difference between being offered help with addressing her drug problem and being required to get the help. Since we have concluded that this difference did not render the treatment plan inappropriate, we must likewise conclude that Mother has failed to demonstrate that she suffered prejudice as a result of counsel's failure to object to the treatment plan. *See In re C.M.C.*, ¶ 30 (even if counsel's assistance was ineffective, the parent must have suffered prejudice to be entitled to relief). Mother's claim of ineffective assistance of counsel, therefore, is unavailing.

¶32 *3. Was the District Court required to disclose to the parties transcripts of its in-chambers interviews with the children?*

¶33 Mother argues the District Court erred when it declined to provide the parties with transcripts of the court's in-chambers interviews, and that the District Court's error left Mother unable to formulate appropriate arguments regarding how the children's wishes relate to their best interest and Mother's current circumstances.

¶34 In a previous ruling, we held that district courts may conduct in-chambers interviews of children in abuse and neglect cases. *In re M.L.H.*, 220 Mont. 288, 292–93,

715 P.2d 32, 34–35 (1986). Our holding relied on the statute that provides for in-chambers interviews of children in marital dissolution proceedings:

> The court may interview the child in chambers to ascertain the child's wishes as to residence and parental contact. The court may permit counsel to be present at the interview. The court shall cause a record of the interview to be made and to be part of the record in the case.

Section 40-4-214, MCA. We specifically cited to the commissioners' note to that statute, which states:

> The general rule is that the judge may interview the child in chambers. It is often important for the judge to discover the attitudes and wishes of the child, and there is no reason to subject the child to the formality of the courtroom and the unpleasantness of cross-examination. This provision does not require the judge to permit counsel to be present at the interview, but he must make some kind of record of the interview (using a court reporter or a tape recorder) *so that counsel for all parties will have access to the substance of the interview.*

Section 40-4-214, MCA (emphasis added). Based on that language, we reasoned that "the parties to the [abuse and neglect] hearing have just as great a need for access to the substance of the interview as do parties to a custody in dissolution hearing." *In re M.L.H.*, 220 Mont. at 293, 715 P.2d at 35. We further noted that, "as a matter of due process, a record made in-chambers provides this Court access to evidence on which the District Court may have relied in making its order." *In re M.L.H.*, 220 Mont. at 293, 715 P.2d at 35. We accordingly held that "a district court may conduct an in-chambers interview of children in an abuse, neglect and dependency proceeding. However, once the District Court, in its discretion, decides to hold such an interview it must make a record of the interview." *In re M.L.H.*, 220 Mont. at 293, 715 P.2d at 35.

15

¶35 Both the commissioners' note and our ruling in *In re M.L.H.* indicate that the purpose of the transcript is partly to allow the parties to know the substance of the interviews, which implies that the district court must disclose the transcript upon request. The commissioners' note, however, is not law. *See Baxter v. State*, 2009 MT 449, ¶ 42, 354 Mont. 234, 224 P.3d 1211 (commission comments do not carry the weight of law); § 1-11-103(5), MCA ("Unless specifically and expressly adopted as part of the law by the legislature, annotations [and] code commissioner notes . . . included in the Montana Code Annotated may not be construed as part of the legislative text . . . .").

¶36 The language of the statute itself does not support an interpretation requiring the district court to disclose the transcript upon request. Subsection (2) of § 40-4-214, MCA, allows the district court to seek the advice of professionals and requires the court to make the advice received available to counsel upon request: "The court may seek the advice of professional personnel, whether or not employed by the court on a regular basis. The advice given *must be* in writing and *made available by the court to counsel upon request*." Section 40-4-214(2), MCA (emphasis added). Subsection (1), providing for in-chambers interviews of children, does not include similar language requiring the court to disclose the substance of the interviews upon request. When the legislature includes language in one part of a statute, but omits it from a related statute or another part of the same statute, the omission is presumed to be intentional. *Cross v. VanDyke*, 2014 MT 193, ¶ 19, 375 Mont. 535, 332 P.3d 215 (citing *Keene Corp. v. U.S.*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040 (1993)).

¶37 Since we are instructed not to insert into a statute what has been omitted, we cannot read into the statute a requirement that the district court disclose the transcript of the interview to the parties upon request. *See* § 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.") Therefore, we hold that the statute does not require the district court to disclose the transcript of the interview to counsel for the parties. To the extent that *In re M.L.H* suggests otherwise, it is overruled.

¶38 We note, however, that § 40-4-214, MCA, grants the district court discretion to permit counsel for the parties to be present at the in-chambers interview. Section 40-4-214, MCA ("The court may permit counsel to be present at the interview."). The legislature thus granted the district court discretion to allow or not allow the parties to know the substance of the interviews. This does not mean that the district court's discretion to disclose or withhold the substance of the interviews is unfettered. Due process considerations may require disclosure in certain instances, particularly where the district court relies on information from the interviews in reaching its determination. But those are not the facts here. We have reviewed the transcripts of the in-chambers interviews and the court's findings and conclusions and found nothing suggesting the District Court relied on any of the information from the in-chambers interviews of the children in making its termination decision. Hence, we are satisfied that the District Court acted within its discretion when it denied Mother's request for transcripts of the interviews.

## CONCLUSION

¶39 While the treatment plan might have been more effective if it had required Mother to obtain a chemical dependency evaluation and treatment, rather than simply requiring that Mother abstain from drugs and alcohol and leaving it to the Department to offer Mother the evaluation and treatment, we are not convinced that this distinction is sufficient to render the treatment plan inappropriate. Similarly, we hold counsel's failure to object to the treatment plan was not prejudicial. The District Court's termination decision rested on the best interests of the children and the reality that Mother could not be expected to be ready to resume parenting in a reasonable amount of time. Finally, the District Court properly exercised its discretion to deny Mother's requests for the transcripts. Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE

Justice McKinnon, concurring.

¶40 I agree that the District Court did not abuse its discretion in terminating Mother's rights based upon her failure to complete an appropriate treatment plan and because it was not likely Mother could address her addiction within a reasonable time given the concerns of permanency for the children. The treatment plan recognized Mother had a

18

chemical dependency problem and required that she address her addiction. We have previously said that "[a]lthough the State may assist the parents in completing the treatment program, the parents retain the ultimate responsibility for complying with the plan." *In re R.H.*, 250 Mont. 164, 171, 819 P.2d 152, 156 (1991) (citation omitted). It is my view that, ultimately, this burden of compliance must consistently remain upon the parent. For this reason, I join the Court's decision finding that the treatment plan was appropriate and Mother could not effectuate a change regarding her methamphetamine addiction within a reasonable period of time.

¶41 Although I concur in the Court's decision to affirm termination of Mother's parental rights, I write separately because I am deeply troubled by the notion that a parent needing inpatient treatment[1] for a methamphetamine addiction must somehow muster up the discipline and fortitude—undisputedly lacking in their life—sufficient to navigate the admission process for treatment. Certainly it should be understood that with no more assistance than a list of treatment providers and no requirement for a chemical dependency evaluation, it is unlikely a parent with a severe methamphetamine addiction would successfully seek out and obtain treatment. If they could have managed this on their own previously, it would not be necessary for the Department to become involved in the first instance. While clearly the treatment of drug addiction necessitates that an individual take ownership of their life, those providing services to a parent and attempting reunification of a family must understand that a "hands-on" approach may

_____

1 Dr. Bowman Smelko, PsyD, who conducted a psychological evaluation of Mother, recommended that Mother's primary issue was substance abuse and that following incarceration she could receive inpatient treatment.

initially be required to secure admission into treatment. Once in treatment, the treatment provider, in conjunction with effective drug testing, can be relied upon to provide an assessment of a parent's commitment and prognosis for change. Until that point, the most that can be expected from a parent with this severe an addiction is normally their willingness and desire to change—not the ability to carry it out. How to carry it out is what they learn in treatment.

¶42 While I can appreciate that Treatment Court was not available until Mother committed a criminal offense, her success in Treatment Court demonstrates that had this structure and guidance been made available to her earlier in these proceedings the outcome may have been different. Given the prevalence of drugs and their dismantling effect upon families, I think it is extremely important that those charged with the responsibility of facilitating treatment provide a regiment of guidance and support which ultimately will require that the parent is accountable for their addiction. Mother may not have ever embraced treatment under the direction of the Department, but it is my view that the better practice would be to do more than merely provide Mother with a list of counselors and to instead actually assist Mother in getting the treatment.

¶43 Nevertheless, as I believe it was ultimately the responsibility of Mother to complete the treatment plan; the treatment plan required Mother to address her chemical dependency issues and was therefore appropriate; and in light of the other findings made by the District Court regarding termination, I concur with the Court's decision to affirm termination of Mother's rights. I write separately only with the hope of improving the

20

delivery of services to a parent who needs assistance—and perhaps a strong push—into a treatment program.

/S/ LAURIE McKINNON