FILED

03/20/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0473

DA 17-0473

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 50

IN THE MATTER OF:

J.E.L., III,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 16-067
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Shannon Hathaway, Montana Legal Justice, PLLC, Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Rick Helm, Deputy County
Attorney, Billings, Montana

Submitted on Briefs:  February 21, 2018

Decided:  March 20, 2018

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 J.P. (Mother) appeals the District Court's order terminating her parental rights to her son J.E.L. She argues that the District Court improperly concluded that the conduct or condition rendering her unfit to parent was unlikely to change in a reasonable time. Mother also argues that the State improperly relied on inadmissible evidence to which her counsel failed to object, denying her the effective assistance of counsel and amounting to plain error. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 The Department of Public Health and Human Services (Department) received a report in February 2016 that Mother had been using methamphetamine and neglecting three-year-old J.E.L. After conducting an investigation, the Department placed J.E.L. in protective custody with relatives. The Department filed a petition for emergency protective services, adjudication as youth in need of care, and temporary legal custody. The Department's records showed that Mother previously had lost custody of her two older children due to her drug use and neglect dating back to 2002.

¶3 The District Court granted the Department's petition for emergency services and—with Mother's stipulation—adjudicated J.E.L. a youth in need of care and granted the Department temporary legal custody. Mother entered the Second Chance Home in Billings, and J.E.L. moved in with her there in May 2016.

¶4 The District Court entered a treatment plan for Mother in August 2016. The plan's stated goals were to encourage Mother's sobriety and to improve her parenting skills and

relationship with J.E.L. The plan required Mother to "complete a chemical dependency evaluation and follow all recommendations"—which included maintaining sobriety—to submit to random drug and alcohol testing, to sign all relevant releases or authorizations, to complete a parenting class, to attend monitored visitations with J.E.L., and to "follow all rules and guidelines as a resident of Second Chance Home."

¶5 Mother successfully completed the Second Chance Home program in November 2016, although she did relapse multiple times while living there. Upon completion, she moved into her own apartment with J.E.L. Mother subsequently tested positive for marijuana, alcohol, and methamphetamine multiple times in early 2017. After Department personnel encountered Mother drinking at a local bar in January 2017, the Department removed J.E.L. from Mother's custody and placed him with his maternal grandparents.

¶6 The Department filed a petition for permanent legal custody and termination of parental rights with right to consent to adoption in April 2017, based on Mother's ongoing substance abuse. The District Court held a termination hearing on June 14, 2017. The court heard testimony from Mother; four of Mother's treatment providers; Mother's father; and Brittney McNamara, a child protection specialist with the Department. The testimony established that Mother had made some progress in managing her mental health and drug addiction issues, but also that she had failed to maintain sobriety throughout the proceedings and that she routinely tested positive for drugs and alcohol, including in the weeks leading up to the hearing.

¶7 During the hearing, counsel for the Department asked multiple witnesses—including Mother and McNamara—about Mother's discharge from the Montana Chemical Dependency Center (MCDC). The Department's counsel read aloud from a discharge summary document from MCDC during the testimony and asked the witnesses questions about it. The Department sought to show that Mother was discharged from MCDC not because she successfully completed her chemical dependency program there, but because she was showing no progress and the MCDC staff believed that she would not benefit from further treatment. The Department did not call a witness to attest to the discharge summary's authenticity, and it did not offer the document into evidence. Mother's counsel did not object to the Department's use of the document, but did elicit testimony from Mother contradicting the Department's characterization of her discharge.

¶8 The Department's counsel also asked McNamara about a conversation she had with Mother's drug patch provider, Neil Friedel. McNamara stated that Friedel "figures that [Mother] was a pretty heavy drug addict." The Department did not call Friedel to testify, and Mother's counsel did not object to McNamara's testimony.

¶9 At the close of the hearing, the District Court stated, "there's no question that the State has proven by clear and convincing evidence that the Treatment Plan has not been fully complied with." The court emphasized that "the issue is the drug addiction." It expressed doubt that Mother's addiction could change in a reasonable time. The court addressed Mother, stating, "I know you've made great efforts to try to address your addiction issues, and it sounds like you have made some progress." The court reasoned,

4

however, that Mother was currently in a relapse "that's been recurring since December," that Mother's failed drug tests in the weeks before the hearing were "very concerning," and that Mother had a "chronic" addiction dating back fifteen years. The court stated, "I guess the issue then is is it likely to change . . . I wish I could say it was." The court advised Mother, however, that based on the evidence, it had "unfortunately" come to the conclusion that the situation was unlikely to change within a reasonable time. It therefore granted the State's motion to terminate Mother's parental rights.

¶10 The District Court later entered its written Findings of Fact, Conclusions of Law, and Order Terminating Parental Rights of Natural Mother. In its findings of fact, the court stated, "Brittney McNamara, Department Social Worker, testified that, despite the Department's reasonable efforts, [Mother] has failed to make even minimal attempts to compete any of the tasks of her Phase I Treatment Plan." The order reiterated the court's finding that Mother's conduct or condition rendering her unfit to parent was "unlikely to change within a reasonable time." Mother appeals.

**STANDARDS OF REVIEW**

¶11 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re K.A.*, 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. *In re K.A.*, ¶ 19.

5

¶12 We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. *In re D.B.*, 2007 MT 246, ¶ 18, 339 Mont. 240, 168 P.3d 691. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *In re N.R.A.*, 2017 MT 253, ¶ 10, 389 Mont. 83, 403 P.3d 1256.

¶13 Whether a person has been denied his or her right to due process is a question of constitutional law, for which this Court's review is plenary. *In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, 87 P.3d 408. A claim of ineffective assistance of counsel presents mixed questions of law and fact, for which our review is de novo. *In re C.W.E.*, 2016 MT 2, ¶ 9, 382 Mont. 65, 364 P.3d 1238.

## DISCUSSION

¶14 *1. Whether the District Court's finding of fact that the conduct or condition rendering Mother unfit to parent was unlikely to change within a reasonable time was clearly erroneous.*

¶15 Mother argues that the District Court wrongly found that the conduct or condition rendering her unfit to parent—her chemical dependence—was unlikely to change within a reasonable time. She claims that the error violated her fundamental constitutional right to parent her child. She contends further that the District Court abused its discretion in determining in its written order that Mother had failed to make even "minimal attempts" to complete her treatment plan. She asserts that the evidence showed that her condition was improving and was likely to change with time. Mother contends that much of the

6

evidence on which the District Court relied in making its decision—the Department's discussion of Mother's MCDC discharge summary and McNamara's testimony regarding her conversation with Friedel—was presented improperly at the termination hearing and prejudiced her right to a fundamentally fair proceeding.

¶16 Under § 41-3-609(1)(f), MCA, a district court may terminate parental rights upon a finding by clear and convincing evidence that:

> the child is an adjudicated youth in need of care and both of the following exist: (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶17 This statute requires full compliance with a treatment plan. *In re A.H.*, 2015 MT 75, ¶ 35, 378 Mont. 351, 344 P.3d 403. "Partial or even substantial compliance is not sufficient." *In re A.H.*, ¶ 35. "In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time," the court must make a finding that continuing the parent-child legal relationship "will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. A district court "should assess a parent's past and present conduct" in making this determination. *In re A.H.*, ¶ 36.

¶18 The District Court's written order stated that McNamara had testified that "[Mother] has failed to make even minimal attempts to complete any of the tasks of her Phase I Treatment Plan." McNamara did not testify to this. Instead, she testified that Mother had

7

completed many of the treatment plan's requirements but had failed to complete the requirement that she stay sober. Other testimony from the hearing clearly established that Mother had successfully completed many of the treatment plan's requirements, including completing the Second Chance Home program, attending visitations with J.E.L., attending parenting classes, and signing all releases and authorizations. The court's written finding was clearly erroneous because it inaccurately described McNamara's testimony and was not supported by substantial evidence presented at the hearing.

¶19 The court's oral findings, however, contradict its written order. During the hearing, the court stated to Mother, "I know you've made *great efforts* to try to address your addiction issues, and it sounds like you have made some progress." (Emphasis added). The court noted Mother's compliance with visitation and success at the Second Chance Home. The court explained, however, that Mother had not complied fully with the treatment plan, and it expressed doubt that she could resolve her chemical dependence in a reasonable amount of time, given her past and present drug and alcohol abuse. The court noted that Mother was "still in relapse and that's been recurring since December, and obviously with, um, dirty [urinalysis tests] 12 out of the last 20 days, that's very concerning." The court explained that "this drug addiction is chronic—in fact goes back 15 years." The court had observed earlier during McNamara's testimony that there was "no question" that Mother was addicted to drugs and that she "hasn't recovered yet."

¶20 Although the District Court's written finding was clearly erroneous, its oral findings are supported by ample evidence in the record. We may consider a district court's oral

8

findings in addition to its written findings. *See In re K.H.*, 2012 MT 175, ¶¶ 45-49, 366 Mont. 18, 285 P.3d 474 (discussing the district court's "extensive oral findings" in determining that sufficient evidence existed to support the court's decision not to adjudicate two children as youths in need of care); *see also Brunette v. State*, 2016 MT 128, ¶ 33, 383 Mont. 458, 372 P.3d 476 (considering the district court's oral findings in concluding that the evidence supported the court's denial of defendant's motion to reinstate his driver's license); *In re S.G.R.*, 2016 MT 70, ¶ 23, 383 Mont. 74, 368 P.3d 1180 (noting that, in the context of civil commitment proceedings, a district court's oral findings "are appropriate for consideration under our precedent"). At the end of the hearing, the court based its decision to terminate Mother's parental rights on its conclusion that, despite Mother's "great efforts," she continued to struggle with addiction and would be unable to change that condition within a reasonable time.

¶21 Disregarding the MCDC discharge summary and McNamara's testimony regarding her conversation with Friedel, the record still provides substantial support for the court's conclusion. The evidence showed that Mother had struggled with drug addiction for years prior to the initiation of these proceedings. She relapsed while staying at the Second Chance Home. She either missed scheduled drug tests or tested positive for methamphetamine, marijuana, or alcohol on numerous occasions throughout the proceedings. McNamara testified that Mother had "either failed to show or tested positive" at more than half of her drug tests, and she noted that Mother tested positive for substances on June 10 and 11, 2017, just days before the termination hearing. Rebecca Baumgardner,

a licensed addiction counselor who had worked with Mother since May 2016, testified that Mother was a "chronic drug user" and that she was in a "relapse cycle" dating back to December 2016. Ailine Ostby, Mother's mental health counselor, testified that Mother showed progress in therapy and needed "probably a year" of additional counseling, but she could not guarantee that another year would resolve Mother's addiction issues. Ostby acknowledged that Mother's issues had been "ongoing for nearly a decade." Because of Mother's history of substance abuse and her inability to stay sober, the District Court's finding that her chemical addiction was unlikely to change within a reasonable time was supported by substantial evidence and was not clearly erroneous. *See* § 41-3-609(1)(f), MCA; *In re A.H.*, ¶ 36.

¶22 Mother presented testimony from her treatment providers that she was making progress with her mental health and chemical dependence issues at the time of the hearing, that she had been actively engaged in treatment programs and parenting support groups, and that her "spiral" of relapses had been improving. That the testimony at the hearing could have supported a different finding does not change the fact that the District Court's finding was supported by substantial evidence. *See Peretti v. Dep't of Revenue*, 2016 MT 105, ¶ 18, 383 Mont. 340, 372 P.3d 447 ("Findings of fact can be based upon substantial evidence despite the fact that there was evidence that may have supported a different result.").

¶23 Substantial evidence existed to support the District Court's findings of fact that Mother had not fully completed her treatment plan and that the condition rendering her

10

unfit to parent was unlikely to change within a reasonable time. The District Court did not misapprehend the effect of the evidence, and we are not convinced that it made a mistake.

¶24    *2. Whether Mother is entitled to a new hearing because of the ineffective assistance of her counsel or plain error at the termination hearing.*

¶25    Mother argues that she was denied effective assistance of counsel by her counsel's failure to object to the Department's use of McNamara's hearsay testimony and of the MCDC discharge summary. Because Mother's counsel raised no objections to this evidence at the hearing, Mother also asks this Court to review for plain error whether the Department's use of this evidence violated her fundamental rights.

¶26    Parents are entitled by due process standards to the effective assistance of counsel in parental termination proceedings. *In re A.J.W.*, 2010 MT 42, ¶ 24, 355 Mont. 264, 227 P.3d 1012. We evaluate the effectiveness of counsel in such proceedings using two non-exclusive criteria. *In re A.S.*, ¶ 26. "The first factor requires consideration of counsel's experience and training representing parents in termination proceedings, and the second is the quality of advocacy demonstrated at the hearing." *In re T.N.-S.*, 2015 MT 117, ¶ 30, 379 Mont. 60, 347 P.3d 1263. Even if counsel's performance is deficient under these criteria, however, we will not reverse for ineffective assistance of counsel unless the parent "suffered prejudice as a result" of the deficient performance. *In re T.N.-S.*, ¶ 30.

¶27    Accepting Mother's argument that her counsel had valid grounds on which to object to the Department's repeated discussion of her MCDC discharge summary without offering it into evidence, and to McNamara's hearsay statements about Friedel's beliefs, the record does not show that Mother "suffered prejudice as a result" of the admission of this

11

evidence. *See In re T.N.-S.*, ¶ 30. Mother claims that the District Court relied on the inadmissible evidence in deciding to terminate her parental rights. But the record contains other substantial admissible evidence that Mother had a persistent drug addiction, that she had been unable to stay clean, and that she was unlikely to resolve her addiction within a reasonable time.

¶28 The evidence showed that Mother had abused drugs for over a decade prior to the hearing, that she had relapsed multiple times during the proceedings, and that she had missed or failed numerous drug and alcohol tests from early 2017 up to shortly before the hearing. Baumgardner testified that Mother was a "chronic drug user" who was currently in a "relapse cycle." Even if Mother's counsel had objected successfully to the Department's references to the MCDC discharge summary and to McNamara's hearsay testimony, there is not a reasonable likelihood that the exclusion of this evidence would have altered the District Court's conclusion that Mother's drug addiction was "chronic" and unlikely to change within a reasonable time.

¶29 We conclude that the admission of the challenged evidence did not prejudice the outcome of the proceedings. Mother is not entitled to a new hearing on the grounds of ineffective assistance of counsel or plain error. *See In re T.N.-S.*, ¶ 30; *State v. White*, 2014 MT 335, ¶ 36, 377 Mont. 332, 339 P.3d 1243 (declining to exercise plain error review because defendant failed to show prejudice from the alleged error). The court stated in its written order that it gave "primary consideration to the physical, mental, and emotional

conditions and needs of [J.E.L.]," which it was required by statute to do prior to terminating Mother's parental rights. *See* § 41-3-609(3), MCA.

## CONCLUSION

¶30    Based on the competent substantial evidence presented at the termination hearing, we conclude that the District Court did not clearly err in finding that Mother's chemical dependence was unlikely to change within a reasonable time. It properly gave priority to the child's best interests and did not abuse its discretion in ordering termination of Mother's parental rights. The District Court's order is affirmed.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON