FILED

06/02/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 19-0570

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 143N

IN THE MATTER OF

T.N.B., A.M.B., and S.M.B.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause Nos. DN 18-90, DN 18-91,
and DN 18-92
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Michael P. Sinks, Attorney at Law, Bozeman, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Katie F.
Schulz, Assistant Attorneys General, Helena, Montana

        Scott D. Twito, Yellowstone County Attorney, Amanda Tiernan, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  May 6, 2020

Decided:  June 2, 2020

Filed:

             _____
                          Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition shall be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 K.T. (Mother) appeals the judgments of the Montana Thirteenth Judicial District Court terminating her parental rights to the above-referenced minor children. We affirm.

¶3 Mother and N.B. (Father) were the birth parents of the minor children S.M.B., A.M.B., and T.N.B. The Montana Department of Public Health and Human Services (Department) most recently became involved with the family on March 8, 2018, when emergency responders responded to the family home on Mother's 911 report that eighteen-month-old A.M.B. was unresponsive.[1] After helicopter transport from Laurel, MT, A.M.B. was diagnosed at St. Vincent's Hospital in Billings as suffering from a life-threatening head injury/brain bleed. Attending medical personnel also observed a recent humerus/arm fracture and stomach bruising. After stabilization, A.M.B. underwent an emergency surgery for removal of a skull bone segment to relieve pressure on his brain. He was subsequently flown to the Primary Children's Hospital in Salt Lake City and admitted in critical condition on a ventilator and breathing tube.

---

[1] The Department was previously involved with the family when, *inter alia*, the two older children (S.M.B. and A.M.B.) were adjudicated as youths in need of care based on the parents' methamphetamine use. The Department's involvement ultimately ended in that case upon the parents' respective completions of reunification-oriented treatment plans.

¶4 After the incident, Father stated to investigators that, upon arriving home from work at approximately 5:30 p.m., he encountered Mother with the non-responsive A.M.B. in her arms, frantically screaming he "just went limp." Father said that he immediately directed Mother to call 911 as he attempted CPR while they waited for emergency responders. Mother recounted after the incident that, upon temporarily leaving A.M.B. in his playpen to step outside to smoke, she heard crying and returned to find two-and-a-half-year-old S.M.B. in the playpen, kicking and hitting A.M.B. with a toy. She said that she immediately picked up A.M.B. and found it strange that he immediately fell "asleep" in her arms. She said that, at the time, she was talking to Father, who had called on his way home from work, and told him that S.M.B. had been kicking and hitting A.M.B. She said that A.M.B. "just went limp and stopped breathing" as Father arrived home. Mother's account was inconsistent with Father's initial statement that he heard eight-month-old T.N.B. and S.M.B. playing in the background while on the phone with Mother on the way home.

¶5 The collective record statements of the attending St. Vincent's physician, Primary Children's Hospital physician, and the Department's subsequently retained physician/child abuse expert indicated that A.M.B. suffered a subdural brain hematoma of such severity that the resulting internal bleeding and swelling compressed his brain to one side in his skull, causing herniation of his temporal lobe, *inter alia*. Examination further revealed a torn cortical vein from A.M.B.'s brain, an impact bruise on the side of his face/forehead, a humerus/arm fracture, and a shaped bruise with scattered bruising on a leg. The

3

Department's retained physician/child abuse expert testified that A.M.B.'s injuries were consistent with child abuse and inconsistent with Mother's account of hitting and kicking by a two-and-a-half-year-old sibling. He testified that, under the circumstances, only a severe blunt-force impact administered by an adult was likely to have caused A.M.B.'s head trauma. Mother was the only adult with access to A.M.B. at the time of the injury.

¶6 After taking T.N.B. and S.M.B. into protective custody, the Department petitioned pursuant to Title 41, ch. 3, MCA, for emergency protective custody of all three children, youth in need of care adjudications, and temporary legal custody based on alleged physical abuse of A.M.B. and physical neglect of all three.[2] Upon appearance with their respective counsel at the initial show cause hearing on March 26, 2018, the parents stipulated to probable cause and continued emergency protective custody. At the combined adjudicatory and dispositional hearing on May 21, 2018, the parents again appeared with respective counsel and, based on the uncontested petition allegations, stipulated to adjudication of the children as youths in need of care, with six-month grants of temporary legal custody to the Department.

¶7 On June 1, 2018, based on the allegation that Mother "committed aggravated assault against [A.M.B.]," the Department petitioned for a determination pursuant to § 41-3-

---

[2] In addition to describing the alleged circumstances of A.M.B.'s injuries, the petition further alleged that the family home was in an unkempt and unsanitary state and that all three children were found in filthy, unkempt conditions marked by dirty hair, hands, feet, clothes, and smelling of urine with diaper rashes, *inter alia*. The petition further outlined the parents' extensive prior child abuse and neglect history with the Department and its Oregon counterpart.

4

423(2), MCA, that it had no further duty to make family preservation efforts regarding Mother and the children. On August 24, 2018, while she was apparently in Oregon, the State of Montana charged Mother with the aggravated assault of A.M.B, a felony in violation of § 45-5-202, MCA. Subject to a pending arrest warrant in the criminal case, and apparently still in Oregon, Mother failed to personally appear or otherwise participate at the December 6-7, 2018, hearing on the Department's no-preservation-efforts petition. At the hearing, the Department presented testimony and evidence from the investigating sheriff's detective, the assigned Department social worker, Father, and its retained physician/child abuse expert. The District Court subsequently issued an oral bench judgment, followed by written findings, conclusions, and judgment, determining pursuant to § 41-3-423(2), MCA, that Mother subjected A.M.B. to aggravated assault on March 8, 2018, and that the Department thus had no further duty to make family preservation efforts.

¶8 On March 27, 2019, the Department petitioned for termination of Mother's parental rights to all three children pursuant to §§ 41-3-609(1)(d) and -423(2), MCA. At the termination hearing on August 12, 2019, Mother appeared with counsel but did not testify.[3] The District Court subsequently issued written findings of fact, conclusions of law, and judgment terminating Mother's parental rights pursuant to §§ 41-3-609(1)(d)

---

[3] Counsel advised that Mother declined to testify based on the continued pretrial pendency of her parallel-pending criminal case and her constitutional right against self-incrimination.

and -423(2)(a), (c), MCA, based on the aggravated assault of A.M.B. and chronic severe neglect of all three.[4]  Mother timely appeals.

¶9     Mother asserts on appeal that she received ineffective assistance of counsel at the December 6-7, 2019, hearing on the Department's no-preservation-efforts petition.  She asserts the counsel was constitutionally ineffective based on his failure to:

> actively pursue her interests, make appropriate objections, vigorously cross-examine witnesses, or make [an] extended closing argument.  Rather, he engaged in what can best be described as cursory cross-examination of the Department's witnesses, asking few (if any) questions, and asked only a single arguably helpful question regarding the ancillary issue of [her] alleged intoxication.

(Internal alterations and quotation marks omitted.)  In that regard, she points out that counsel did not "thorough[ly] and vigorous[ly]" cross-examine the Department's physician/child abuse expert by asking "how many brain bleed injuries involving 18 month old[] [children] he had dealt with" or whether "it was possible that repeated kicking in the side of the head with the heel of a two-year[-]old's foot could cause deflection in the 'plastic skull' of an 18 month old."  She further asserts that, "in order to more effectively administer cross[-]examination," counsel "could have" objected to the expert's telephone testimony in lieu of in-court or two-way video testimony.  She asserts that counsel was

---

[4] Presumably drafted by the Department, through the County Attorney, the court's written findings, conclusions, and judgment are not the model of clarity insofar that they did not specify on which particular § 41-3-423(2) predicates the court based the -609(1)(d) terminations and then further conflated the -609(1)(d) termination criteria (aggravated circumstances) with the distinct termination criteria under -609(1)(f)(ii) (i.e., treatment plan failure/condition of unfitness unlikely to change within reasonable time).  We nonetheless liberally construe the court's judgment in accordance with the underlying termination petition, hearing evidence, and applicable law.

further ineffective by failing to challenge the testimony of other Department witnesses in various regards. She asserts that counsel's allegedly deficient performance was highly prejudicial based on the fact that the no-preservation-efforts determination was the "most crucial juncture of the case" and that counsel's performance "effectively presented . . . a one-sided view of the evidence from which the court could draw but one conclusion." We disagree.

¶10 Pursuant to the 14th Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution, parents have a fundamental right to effective assistance of counsel in termination proceedings under Title 41, ch. 3, MCA. *See In re A.S.*, 2004 MT 62, ¶¶ 12-20, 320 Mont. 268, 87 P.3d. 408. In this context, the two-prong standard for ineffective assistance of counsel (IAC) claims is whether counsel's performance was objectively deficient under the totality of the circumstances and, if so, whether the deficient performance materially prejudiced the parent's fundamental liberty interest in parenting his or her child. *See A.S.*, ¶¶ 26-33. In contrast to the less-demanding standard applicable in criminal cases, considerations relevant to whether counsel's performance was deficient under the first prong include, *inter alia*, whether he or she was "verifiably competent" based on training and experience to handle such a matter and whether counsel adequately investigated the case, consulted with the client, researched applicable law, prepared for hearing (by interviewing adverse witnesses and discovering and considering other available evidence), made proper objections, cross-examined adverse witnesses, presented available favorable evidence, and advocated on behalf of the

client based thereon. *A.S.*, ¶¶ 21-30. Under the second prong, a deficient performance materially prejudiced a parent's fundamental right to parent only if it is reasonably probable under the totality of the circumstances that the outcome would have been different but for the deficient performance. *See In re the Matter of J.E.L.*, 2018 MT 50, ¶ 29, 390 Mont. 379, 414 P.3d 279. *See also Ariegwe v. State*, 2012 MT 166, ¶ 16; 365 Mont. 505, 285 P.3d 424; *Heath v. State*, 2009 MT 7, ¶ 17, 348 Mont. 361, 202 P.3d 118. A parent asserting IAC has the burden of clearly demonstrating both prongs of the claim. *See In re M.W.*, 2001 MT 78, ¶¶ 36-41, 305 Mont. 80, 23 P.3d 206. Our review of IAC claims is plenary. *A.S.*, ¶ 9.

¶11 Here, Mother's IAC claim fails on both prongs. She first raises no issue regarding counsel's competence. Aside from cursorily pointing out various omissions in his performance, she has failed to show that those omissions were objectively unreasonable or deficient under the circumstances of this case, particularly in light of her unexplained absence at the subject hearing. The significance of her unexplained absence to her subsequent IAC claim is further amplified by the glaring absence of any showing that she was otherwise available and desired to consult with counsel in advance of hearing or that, if so, counsel did not adequately or timely consult with her or attempt to do so.

¶12 Beyond cursory assertion, Mother has further made no showing that counsel did not adequately investigate the case, prepare for hearing, or investigate and consider the anticipated testimony of Department witnesses. She has similarly failed to show that counsel failed to adequately discover, secure, or present any reasonably available

impeachment or rebuttal testimony, expert or other, likely to materially counter or undermine the Department's evidence. Cursory assertion of omissions in counsel's performance is insufficient without more to demonstrate deficient performance, much less material prejudice. Even if we were to accept some of Mother's assertions of deficient performance, she has in any event failed to demonstrate any reasonable likelihood that the outcome of the subject hearing would have been different but for those deficiencies. We hold that Mother has failed to demonstrate that she received ineffective assistance of counsel regarding the hearing and the District Court's aggravated assault and no-preservation-efforts-required determinations under § 41-3-423(2)(c), MCA.

¶13 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. It presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶14 Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

9